Ralston et al. *v.* Wood.

---

James M. Ralston et al., Appellants, *v.* John Wood, Appellee.

APPEAL FROM ADAMS.

An order of a probate court against an administrator, ordering him to pay over money in his hands to an heir, is conclusive; and if not complied with, entitles the person in whose favor it is made, to recover upon the administrator's bond against principal and security. And the suit upon the bond is a collateral action, founded as well upon the judgment as upon the bond; and when that judgment is offered in evidence, it cannot be inquired into except for fraud. The security, although not a party to the first proceeding, is bound by it.

If the security thinks a judgment of the probate court is unjust, an appeal to the circuit court is his proper remedy.

In 1847 an order of the probate court was made, directing an administrator to pay over money to the heir, in 1844 the administrator, being also guardian to the heir, was ordered, as guardian, to pay over another sum to the same heir; one of the securities who was upon both bonds, was sued, and made to pay for the default of the administrator; he afterwards sued the heirs of his

15   159
21a  287
24a  461

15   159,
126  320,

15   139,
31a  648

15   159
142  361

15   159
147  111

15   159
160  210
49a  123

15   159
53a  241

15   159
71a  394

15   159
182  408

cosecurity for contribution : — *Held*, that it was too late in the suit for contribution, for the heirs of the cosecurity to make an objection, that the orders against the administrator and the guardian, to pay to the heir, directed him to pay the same sum, in the different capacities in which he acted.

Where one person is obligated to pay money for the use of another, a payment in property or securities, if received as a full satisfaction, is good.

This cause was heard before WALKER, Judge, at June term, 1853, of the Adams Circuit Court.

This was a suit in chancery brought by the defendant Wood against the legal representatives of his cosecurities upon the administration bond of Daniel G. Whitney, as administrator of Nathaniel Pease, deceased, to recover contribution for moneys paid by him as such security, as he insists, to one of the heirs of said deceased.

Wood alleges in his bill substantially, that on the 21st of September, 1836, Daniel G. Whitney and Jacob Perkins were, by the probate court of Adams county, Illinois, appointed administrators of said deceased, and executed a bond as such, (which is in the statutory form,) in the penalty of $30,000, with himself, Samuel Alexander, Joseph T. Holmes, and Joseph Milnor Higbee, as securities thereon; that Pease being a resident of said county, died intestate in July, 1836, leaving three children his sole heirs at law, and a large estate both real and personal; that Whitney was the sole acting administrator, and received assets of the estate of said deceased, to a large amount, exceeding the liabilities of said estate, and belonging to the heirs of said deceased; that on the 17th of May, 1847, he exhibited his account in said probate court for a final settlement of his said administration; that by said account it appeared there was due and owing from him to Nathaniel Pease, Jr., son and one of the heirs of deceased, on account of his distributive share in said estate, $5,870.14; that said account was allowed; that said sum was adjudged against said Whitney as administrator as aforesaid, and in favor of said Pease, Jr., as such heir as aforesaid, and that said Whitney was forthwith ordered to pay the same.

That Whitney having neglected to pay said money, though demanded, said Pease, Jr., caused a suit to be brought upon said administrator's bond for his use against said Wood as surety thereon, in the circuit court of said county, to recover said sum, in March, 1848, and that on the 14th of June, 1848, he recovered a judgment therein against said Wood for the penalty and $6,248.39 damages, and costs of suit amounting to $14.50; and that on the 9th of August, 1848, said Wood paid said Pease $6,317.75 in satisfaction of said judgment.

Wood further alleges, that said Whitney and Perkins were both insolvent; that said Holmes and Higbee had both died insolvent; and that in December, 1836, said Alexander died intestate, leaving as his sole heirs at law his children Jane S. Ralston, wife of James H. Ralston, Jacob S. Alexander, Perry Alexander, Sally Ann Johnston, wife of Frederick G. Johnston, Esther L. Alexander, and Mary Elizabeth Alexander, and also valuable real estate which descended to them; that said Jane had died, leaving as her sole heir Elizabeth Jane Ralston, then and still an infant, her daughter by said James, and that she inherited the interest of her mother, subject to the rights of said James as husband, in the estate of said Samuel Alexander.

Said Whitney and Perkins, and the heirs and personal representative of said Holmes, Higbee, and Alexander are made defendants to the bill.

The bill prays for contribution from the defendants according to their ability to pay out of property inherited by them from their respective ancestors; and that the amount for which the said heirs of said Alexander be liable, be made a charge upon the lands inherited by them.

The record shows, that after the bill was filed and before hearing, the said Jacob S. Alexander died intestate, leaving his brother and sisters and said Elizabeth Jane Ralston his sole heirs; that they inherited his interest in the estate of said Samuel; that said Esther married George Summers, who had also died, and that said Mary married Alonzo M. Swartwout, and died leaving an infant child, Alexander C. Swartwout, by her said husband, and who inherited her interest in her father's estate; said Summers and Swartwouts were made defendants to the suit.

Perkins, and the representatives of Samuel Alexander, answered the bill.

The answer of Alonzo M. Swartwout, (and the others are substantially like it, and therefore unnecessary to be noticed,) after admitting the appointment of Whitney as administrator of Pease, his sole administration of said estate, and the receipt by him of a large amount of assets belonging to said estate as alleged in the bill; alleges, in substance, that on the 6th of May, 1837, said Whitney was, by the aforesaid probate court, duly appointed guardian of said Nathaniel Pease, Jr., one of the heirs of his intestate, and executed a bond as such (which is in the statutory form) in the penalty of $40,000, with said Wood and Higbee, and one James B. Mathews, his securities therein; that said Whitney, at the time of his said appointment as guardian, having in his hand a large amount of funds received from said assets, to

14*

which his ward was entitled on account of his distributive share in said estate, retained the same as such guardian, and from time to time thereafter received other like funds, and made like retainer of the same; that said Whitney, prior to January, 1840, had, as administrator, received from said assets and as guardian retained for his ward, $7,646.98, to which his ward was entitled, the same being the one third of what he had received from said assets over and above paying the debts of said estate and the costs of administering, and had also as such guardian received $1,584.61, as interest on the money thus retained; that on the 1st of January, 1840, there was a balance against him as guardian in favor of his ward of $8,158.80, on account of the money thus retained by him, and interest thereon; that on the 30th of October, 1840, said Whitney, as guardian as aforesaid, for the purpose of rendering an account to said probate court of his guardianship, filed an account in said court, showing the amount received and paid out by him as such guardian prior to January 1, 1840, from which it appeared there was a balance against him of the sum last above named, and that said account was duly approved and allowed by said court; that said Whitney had, prior to January, 1840, fully administered said estate and paid off all the debts of the same and the costs of administration, and had also paid the other heirs of his intestate their distributive share in the assets of said estate; that at the time he was appointed administrator as aforesaid, he was solvent and well able to pay all of his liabilities, and so continued until long after the filing of said guardian account.

Said answer further alleges that said Pease, Jr., had arrived at full age on the 10th of January, 1844, and that on the 26th of October, 1844, said Whitney, for the purpose of making a final settlement of his guardianship, filed another account as such guardian, in said probate court, having been previously ordered and cited by said court, on the petition of said Pease, to make a final settlement as such guardian, whereby it appeared he, as guardian, was then indebted to his ward $6,915.74. That said account embraced the same moneys specified in the account first above mentioned, and all of the distributive share of the said Pease in the assets belonging to the estate of his father, the same having been retained by said Whitney as guardian as aforesaid; and that the same was on the same day last above named, duly approved and allowed by said court; that said Whitney was then at the instance of said Pease, ordered by said court forthwith to pay the said sum last above named, to said Pease, he and the said Whitney being then present. That said order was for the balance appearing from said account to

be due from said Whitney as guardian, to his said ward, and embraced all for which said Whitney was liable to said Pease, on any account whatever, and that the same still remains in full force.

Said answer denies that Whitney was indebted to Pease in any sum whatever, as administrator, on the 17th of May, 1847, or that he then had any assets in his hands as such administrator, to which said Pease was entitled, and charges that he had then fully administered said estate; that the money specified in said order of the 17th of May, 1847, had been retained by him as guardian as aforesaid, and was embraced in said order of 26th of October, 1844.   That in pursuance of a fraudulent agreement between him and said Wood with the intent to defraud the representatives of said Samuel Alexander, the said Whitney, Higbee, and Mathews being then insolvent, and with the knowledge and consent of said Pease, he fraudulently and with the intent aforesaid, filed said account as administrator, on said 17th of May, 1847, and omitted therein to credit himself with the moneys retained by him as guardian as aforesaid, on account whereof only said pretended balance of $5,870.14 was made to appear against him, and that in like manner and with the like intent, he omitted to seek or ask for any credit on account of such retaining, but permitted, without objection, said order of 17th of May, 1847, to be made against him.

Said answer further charges that said last-mentioned account and order, and all of the orders and proceedings of said court upon said account, are fraudulent and void as to the representatives of said Samuel Alexander.

Said answer further charges that said Wood fraudulently and with the intent to defraud the representatives of said Samuel Alexander, in the said suit against him, upon said administration bond, omitted and failed to properly set up and insist upon the aforesaid retainer, by said Whitney, as guardian, the said order of said 26th of October, 1844, or the invalidity of said order of the 17th of May, 1847, but permitted said judgment to be recovered against him and acquiesced in the same.   And that said judgment is fraudulent and void as against the representatives of said Alexander.

Said answer denies any knowledge as to payment of said judgment by Wood, but charges if the same was paid by him, that such payment was fraudulent as to the representatives of Alexander.

Said answer also denies that the estate of Holmes was insolvent, but admits that Alexander died intestate, leaving the

heirs in said bill named, and valuable real estate which descended to them.

Replications were filed to all of the answers.

At the hearing, the certificate of evidence shows that Wood proved the death of Pease, intestate, leaving a large estate, and three heirs, of whom said Pease, Jr., was one; that Whitney and Perkins were appointed his administrators, and executed a bond as such; the making by said probate court of said order of 17th of May, 1847, and the rendering of the judgment against him, all as alleged in the bill; that he paid said judgment principally by notes and a mortgage payable in future, with interest; that the heirs of Holmes inherited only $125 from him; that Perkins was insolvent, as also the estate of Higbee; that Whitney had been insolvent since 1845, during which year and the two or three succeeding, judgments were entered in the aforesaid circuit court against him, amounting to from $50,000 to $100,000; and that Alexander died leaving the heirs named in the bill, and valuable real estate which descended to them. Said certificate also shows that the defendants proved the appointment of Whitney as guardian, his executing bond as such, the filing of the accounts mentioned in the answer of Swartwout by him as guardian, the petition of Pease for a citation against him to make a final settlement as such guardian, the order of said probate court thereon requiring him to make such settlement, the issuing and service of a citation thereon, and the making of said order of 26th of October, 1844; all as mentioned in said answer. Said certificate also shows the following parol proof: Nathaniel Pease swore that he was a son and one of the heirs of Nathaniel Pease, on whose estate Whitney was administrator; that Whitney was appointed his guardian by the probate court of said county, May 6th, 1837; that said Wood and the aforesaid Higbee and Mathews were the securities upon said guardian's bond; that he became twenty-one years of age January 10, 1844; that on the 26th of October, 1844, Whitney was indebted to him, as his guardian, $6,915.74; that he procured said order of that date; that the amount filed by Whitney as guardian, on that day, embraced all of his distributive share in the personal estate of his father; that after Whitney was appointed his guardian, and previous to said 26th of October, 1844, said Whitney paid to him and for him, divers sums of money, as his guardian; that he always understood from Whitney, that as he received money from the estate of his father not needed for the payment of debts and claims against the estate, he retained his share thereof as his guardian; that said $6,915.74 was all that Whitney owed or

was indebted to him on said 26th of Oct., 1844, upon any and every account and in any capacity or character; that on the 17th of May, 1847, the said Whitney was not, as administrator of the estate of his father, indebted to him in any sum whatever, that he knew of; and that all the money embraced in the order of said court of probate in his favor and against said Whitney, as administrator of the estate of his father, made on the 17th of May, 1847, was embraced in the said order of said court of the 26th of Oct., 1844, and was a part and parcel of the same money specified therein, and of the interest which had accrued on the same.

John Wheeler swore, that he married Rebecca Pease, a daughter, and one of the heirs at law of Nathaniel Pease, said Whitney's intestate, in December, 1837; that from soon after said marriage till 1849, he was well acquainted with said Whitney; that Whitney left the State at the period last named; that in the spring of 1838, Whitney paid him some money on the distributive share of his wife in the personal estate of her father; that at that time Whitney inquired of him if he then wanted all of the distributive share of his wife in said estate, and added, that if he did not, but would let said distributive share remain in his hands, he would pay him interest upon it at the rate of twelve per cent. per annum, which was the usual interest at that time, and portions of the principal from time to time, as he should want it; that it was then agreed between him and Whitney, that the distributive share of his wife in said estate, excepting what was then and had previously been paid, should remain in Whitney's hands, and that Whitney should pay him interest thereon at the rate of twelve per cent. per annum, and portions of the principal as he should call on him therefor; that he let the unpaid portion of said distributive share remain in said Whitney's hands, under said agreement; that Whitney from time to time thereafter, paid him upon it divers sums of money as he called on him for that purpose; that his wife's share in said estate amounted to rising $8,000; that in 1842 he had a final settlement with Whitney, for the first time, in relation to said distributive share, when Whitney was indebted to him therefor, including principal and interest, about $4,000, for which he took the notes of said Whitney; that in 1844 said notes remaining unpaid, were secured by Whitney by a mortgage upon real estate, out of which the same have since been collected; that at the time he made said agreement with Whitney he considered him good, and that by making said agreement he released him from payment of his wife's distributive share in the estate of her father, as administrator,

and his securities on his administration bond from any liability on account thereof; that at the time he first became acquainted with said Whitney, he, said Whitney, was possessed of a large amount of property and doing an apparently prosperous business, and so continued until some time after he made said final settlement with him; that from the time he first became acquainted with Whitney until shortly before his, said Whitney's failure, his business and property continued to increase; that during the years 1839 and 1840 said Whitney was possessed of property worth from $40,000 to $60,000; that said Whitney's credit was perfectly good until after 1842, and that he failed in the summer of 1844.

Hiram Rogers swore, that he married Mary P. Pease, a daughter, and one of the heirs at law of said Whitney's intestate, in December, 1836; that the distributive share of his wife in the estate of her father amounted to rising $8,000; that after said marriage, Whitney from time to time paid him divers sums of money upon said distributive share; that in 1839 he had a final settlement with Whitney as administrator of said estate, when Whitney paid him the distributive share of his wife therein in full, and also delivered to him, for the use and benefit of the heirs of said deceased, the uncollected claims and demands in favor of said estate, the most of which, however, were not of any account, but were uncollectable, and that the distributive share of his wife in said estate, of which he has spoken as such, was exclusive of said claims and demands so delivered by said Whitney to him as above stated.

Ebenezer Moore swore that he was well acquainted with Whitney, from 1836 till 1849; that in 1839 and 1840, Whitney was doing a large business, handled a good deal of money, and was possessed of property worth from $40,000 to $60,000, and that said Whitney's credit was always good until after 1842.

On cross-examination by Wood, he swore that in 1836, when he first became acquainted with Whitney, he was estimated to be worth about $10,000; that he was then doing a smaller business than afterwards; that his business was much increased after being appointed administrator of said Pease, and that in about 1838, he built a dwelling-house, which, with the furniture, cost, as witness supposed, some $16,000.

Henry Root, George M. Brown, and Samuel Holmes swore, the first two, that they became well acquainted with Whitney in 1839, and the last, that he became well acquainted with him in 1834 or 1835, and all, that they continued to be well acquainted with him till 1849; that in 1839 and 1840, he was

doing a large and apparently prosperous business, handled a good deal of money, was possessed of property worth, in the opinion of the first two, from $40,000 to $60,000, and of the last, from $50,000 to $75,000; and all swear that his credit was good until after 1842.

It is admitted as a part of the evidence below, that Whitney was the sole acting administrator of the estate of said Nathaniel Pease, deceased, and as such, attended exclusively to the receipt, collection, and disbursements of the assets of said estate, and that Perkins never received any of said assets; that Wood, on the 2d of October, 1844, took a mortgage from Whitney to indemnify him against liability as security upon said guardian's bond, but that the same was entirely unavailing on account of previous incumbrances upon the property mortgaged.

It is further admitted as a part of the evidence below, that shortly before said order of the probate court of 1847, said Pease requested Whitney to file his account as administrator, and make a final settlement; that Whitney proceeded so to do; and that after the filing of the account filed by him, on the 17th of May, 1847, said order was made on the motion of the attorney for said Pease.

On the 30th of June, 1853, the court below decreed that the heirs of Holmes pay to Wood $12,500, and that said James H. Ralston, Elizabeth Ralston, Perry Alexander, Sally Ann Johnston, and Frederick G. Johnston her husband, Esther L. Summers, Alonzo M. Swartwout, and Alexander C. Swartwout, pay said Wood, on or before the 1st of November, 1853, $3,912.87, the same being one half the amount paid by Wood to Pease, with interest thereon after deducting said $125.00, and in default of such payment that certain real estate held by said representatives of said Alexander, by descent from him as tenants in common, remaining unsold and not partitioned, be sold by a special commissioner appointed for that purpose, to satisfy the same. It was, however, provided by said decree that the same should not be held as a decree *in personam*, against said representatives of said Alexander, or binding upon them, jointly or severally, further than relates to their joint and several estate and interest in the lands decreed to be sold.

It was further decreed that in case the lands ordered to be sold should not bring sufficient to pay said $3,912.87, and interest thereon and costs, and that fact appearing to the court, the court should direct the sale of such other real estate described in the bill, as should appear came to said heirs of Alexander by descent from him.

The court further decreed that Whitney pay to Wood the one half of the amount paid by him to Pease, with interest, and that the heirs of. Alexander have leave, upon payment to Wood, to move for a decree against Whitney for the amount paid by them. No decree against Perkins or the representatives of Higbee.

The defendants, James H. Ralston, Perry Alexander, Frederick G. Johnston, and Sally Ann Johnston, his wife, Esther L. Summers, and Alonzo M. Swartwout, brought the case to this court by appeal.

Several errors are assigned, but the main question in the case is, whether or not the securities on the administration bond of Whitney were liable to pay the distributive share of his ward in the estate of his intestate.

WHEAT and GROVER, for appellants.

WILLIAMS and LAWRENCE, and BROWNING and BUSHNELL, for appellee.

CATON, J. In September, 1836, Whitney was appointed administrator of the estate of Pease, and gave a bond as such administrator in the penalty of thirty thousand dollars, with the complainant Wood, and Alexander, the ancestor of the defendants, and two others, who are insolvent, as his sureties. In May, 1847, Whitney exhibited his administration account to the probate court, from which it appeared there was due and owing from him as administrator to Nathaniel Pease, Jr., one of the heirs of the intestate, $5,870.14, which sum the administrator was adjudged to pay to Pease as heir. Whitney having neglected to pay the money, Pease instituted a suit upon the administration bond, against Wood as surety, and in June, 1848, recovered a judgment against Wood for $6,248.39 damages and costs. This judgment Wood paid off, partly in money, and the balance by giving to Pease his own notes, secured by mortgages on real estate, upon which payment Pease entered satisfaction of the judgment.

In May, 1837, Whitney was also appointed guardian of Nathaniel Pease, Jr., and as such, executed his bond in the usual form, in the penalty of forty thousand dollars, with Wood and two others as sureties.

In October, 1840, Whitney rendered an account of his guardianship, from which it appeared that there was then a balance against him, and in favor of his ward, of $8,158.80 of the moneys which he had received as administrator, after the pay-

Ralston et al. *v.* Wood.

ment of all debts against the estate. The ward attained his majority in January, 1844, after which he cited the guardian before the probate court, who, in obedience to such citation, appeared before said court, and rendered an account of his guardianship. The court then found and adjudged the guardian to be indebted to the ward, in the sum of $6,915.74 ; and the court adjudged the guardian to pay that amount to the ward. The order made against Whitney, in 1847, as administrator, and in favor of the heir, and the order made against him in 1844, as guardian, and in favor of the ward, were for the same moneys which had come to his hands as administrator, as a part of the estate of the intestate, and which belonged to the heir as a portion of his distributive share of the estate, after the payment of the debts.

This bill is filed by Wood against the heirs of Alexander, to compel them to make contribution for the amount which Wood has paid as cosurety with Alexander, upon the administration bond. The heirs resist this claim for contribution, upon the ground, first, that although the money was received by Whitney as administrator, yet it was retained by him as guardian, he having been at the time both administrator and guardian, and that Wood fraudulently suffered the judgment to go against him upon the administration bond, in order to compel contribution out of the estate of Whitney, all of his cosureties upon the guardian bond being insolvent. It is also alleged that the order of the probate court made in 1847, against the administrator, was fraudulently obtained for the same purpose. Second, it is insisted that the notes and mortgage given by Wood to Pease in satisfaction of the judgment, did not amount to a payment, for which he has a right to call upon a cosurety for contribution. The charge of fraud is not, in our judgment, sustained by any proof in the record. So far from Wood having been guilty of a fraud in procuring the order of the probate court against the administrator, in 1847, it does not appear that he had any thing to do with that proceeding, or knew any thing of it, either at that time, or subsequently, till the institution of the suit upon the administration bond. And so far as we may judge from the record of that suit, it seems to have been defended with energy, and in good faith. No fraud having been proved, the question must be determined in the first place upon effect to be given to the judgment of the probate court, entered in 1847, against the administrator, ordering him to pay over the money in his hands to the heir. That that judgment was binding and conclusive upon the administrator himself, there can be no doubt, for he was a direct party to it, and was before the

Ralston et al. *v.* Wood.

court at the time, and the court had competent and indeed exclusive jurisdiction to pronounce that order or judgment. The effect of that order upon the sureties of the administrator, must depend upon our statute. Section 126 of our statute of wills, provides, " If any executor or administrator shall fail or refuse to pay over any moneys or dividends to any person entitled thereto, in pursuance of the order of the court of probate lawfully made, within thirty days after demand made for such moneys or dividends," the executor or administrator may be attached; " and moreover such failure or refusal on the part of such executor or administrator, shall be deemed and taken in law, to amount to a *devastavit*, and an action upon such executor's or administrator's bond, and against his or their securities, may be forthwith instituted and maintained, and the failure aforesaid to pay such moneys or dividend, shall be a sufficient breach to authorize a recovery thereon." If we are to give any force to language, this statute certainly makes that order as conclusive against the security, as against the administrator himself. That judgment or order is made evidence of a *devastavit*, if not complied with, and entitles the person in whose favor it is made, to recover upon the bond against both principal and security. The suit upon the bond is a collateral action, founded as well upon that judgment as upon the bond itself, and when the judgment is offered in evidence like any other judgment of a court of competent jurisdiction, it cannot be inquired into by those affected by it, except for fraud. Although Wood was not a party directly to that proceeding, yet he was bound by it, for the simple reason that he agreed to be bound by it when he entered into the bond; for the law said, if he entered into the bond, he should be bound by it. This answers every objection of hardship or injustice which might appear to exist, by holding him concluded by a proceeding which he was not notified to defend. By entering into the bond, he not only assumed that the administrator should act with fidelity and discretion in the management of the estate, but he also took the responsibility that he should properly defend any proceeding against him which might be instituted in the probate court. The administrator might do or omit a thousand acts for which the security would be liable, but of which he might be entirely ignorant, or if known, he might be unable to control in the least degree. The hardship in the one case, is no greater than in the other. If he was not willing to take the responsibility of the administrator's conduct and discretion to that extent, he should not have become his security. While the security is bound by the judgments of the probate court against his principal, if he

thinks those judgments are unjust, he is, by the 138th section of the same statute, allowed to take an appeal to the circuit court. And that was the remedy which should have been adopted by the securities in this case, if they thought the order against the administrator was not warranted by law. It is unnecessary to say, in this collateral proceeding, whether the order made three years before, directing Whitney to pay over to the infant this same money as guardian, would have constituted a good defence to the proceeding in 1847, against him as administrator. That defence was not interposed, and the judgment is as conclusive, upon both the administrator and his securities, as if it had never existed. It was too late for Wood to make it, when sued upon the bond, as the court then decided, and it is too late now for the heirs of his cosecurity to make it, when they are sued for contribution. If any doubt could be entertained as to the true construction of our statute, the great number of decisions in other States upon similar statutes, referred to upon the argument, would settle it beyond controversy. But the statute is too plain to require authority, or to admit of doubt. The only remaining question is whether Wood has paid this judgment in such a way, as to entitle him to call upon the heirs of his cosecurity for contribution for the whole amount of that judgment. The judgment was for $6,248.39 and costs. He paid down in cash, $103.25, gave one note for $700.00, payable in April, 1849, and notes for the balance payable in eleven equal annual instalments, abundantly secured by mortgage upon real estate, and which notes have been paid as they have respectively fallen due. This was accepted by the judgment creditor, as a full payment of the judgment, and a receipt to that effect was given, and satisfaction of the judgment entered of record.

We consider it too well settled by authority, to admit of question at this day, that where one person is obligated to pay money for the use of another, a payment made in any mode, either property, or negotiable paper, or securities, if such payment is received as a full satisfaction of the demand, it is equivalent to, and will be treated as a payment in cash. Upon this point, a bare reference to a very few of the many authorities with which the books abound, will be sufficient. Wetherby *v.* Mann, 11 John. 518; McMillan *v.* Crofton, 6 Greenleaf, 307; Randall *v.* Rich, 11 Mass. 494; Pearson *v.* Parker, 3 N. H. 366; Atkinson *v.* Stewart, 2 B. Monroe, 343. There are a few decisions which would seem to conflict with this rule, but they are overborne by such a weight of authority, that the principle may be considei ꟷ as firmly settled. Where the payment is

received as a complete satisfaction, and the debt·or obligation is extinguished, it is a matter of no moment to the person to whose use the payment was made, whether it was made in money, property, or obligations. The benefit to him is the same, and his obligation to refund should be the same.

No other questions being raised as to the correctness of this decree, and these being decided in favor of the complainant, the decree must be affirmed.

*Decree affirmed.*