## Louis Rahe and Herman Rahe, Appellees, v. Henry Jobusch, Joseph H. Gauen, Charles Wischmeier and Lena Wischmeier, Executors of Will of D. Wischmeier, Deceased, impleaded with Frederick Jobusch et al., Appellants.

1. EXECUTORS AND ADMINISTRATORS, § 101*—*power of executor over property as against trustee.* Where a will creates an executor and also a trustee, and gives each of them power over the property without specifying the particular property that each shall have jurisdiction over, the law favors the settlement of the estate by the executor and the determination of the amount that shall pass to the trustee.

2. EXECUTORS AND ADMINISTRATORS, § 101*—*when testamentary trustee may devest executor of property.* A testamentary trus-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tee cannot devest the executor of the property until a reasonable time has elapsed for the settlement of the estate.

3. EXECUTORS AND ADMINISTRATORS, § 81*—*when chargeable with loss of uncollected personal debt.* An executor who owes a note to an estate which he could have collected with the exercise of reasonable diligence and fails to make such collection is chargeable, under Hurd's Rev. St., ch. 3, § 58 (J. & A. ¶ 107), with the amount so lost.

4. JUDGMENT, § 692*—*conclusiveness of judgment of County Court.* The fact that it has been adjudicated and determined by the County Court that a fund was held by a person as executor and not as testamentary trustee, is of weight in determining in what capacity the fund was received and controlled by him.

5. EXECUTORS AND ADMINISTRATORS, § 81*—*when not insolvent so as to be excused for not collecting personal debt.* In an action to set aside an order of the County Court discharging an executor and for a determination as to whether the sureties on the executor's bond or those upon his bond as trustee were liable, and for an accounting, evidence *held* sufficient to sustain a finding that the executor, who owed a note to the estate, was not insolvent at a certain time, and that he could have collected the debt out of his property with the exercise of reasonable diligence.

6. EXECUTORS AND ADMINISTRATORS, § 582*—*when surety liable upon bond of executor.* The simple fact that a person becomes a surety upon an executor's bond does not make such surety liable for a debt that such executor may be owing the estate.

7. EXECUTORS AND ADMINISTRATORS, § 550*—*when evidence sufficient to establish fraud in procuring order of discharge.* In an action by legatees of a will against the executor, both in such capacity and as testamentary trustee, and against the sureties on the trustee's bond to set aside an order discharging the executor and for a determination as to whether the sureties upon the executor's bond or those upon the trustee's bond were liable, and to what extent, and for an accounting, evidence *held* sufficient to sustain a finding that such order was procured by fraud, so as to authorize setting it aside.

8. EXECUTORS AND ADMINISTRATORS, § 85*—*when duty of executor to compound and sell claims.* It is the duty of an executor, where a claim owed to the estate is doubtful or desperate, to make application to the court to compound and sell the claim.

9. JUDGMENT, § 493*—*when surety bound by judgment against executor.* An adjudication by the County Court made upon the final report by an executor that the executor had a certain sum in his hands for distribution, and directing him how to make dis-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tribution, is conclusive upon the executor and upon his sureties under Rev. St., ch. 3, § 115 (J. & A. ¶ 165).

10. JUDGMENT, § 364*—*when judgment of County Court cannot be collaterally attacked.* The judgment of the County Court approving the final report of an executor and ordering payment from the funds in his hands cannot be collaterally attacked except for fraud.

11. EXECUTORS AND ADMINISTRATORS, § 153*—*what constitutes devastavit by executor.* An executor who fails to make payment according to the order of the County Court is guilty of a *devastavit*.

12. EXECUTORS AND ADMINISTRATORS, § 153*—*recovery on bond of executor for devastavit.* Where an executor is guilty of a *devastavit* in not making payment pursuant to an order of the County Court approving his final report and requiring payment out of funds in his hands, suit may be maintained on the bond of such officer and the judgment together.

Appeal from the Circuit Court of Monroe county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed December 1, 1915.

B. R. BURROUGHS and ROY E. GAUEN, for appellants.

J. M. BANDY and D. J. SULLIVAN, for appellees.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The appellees *et al.* recovered a decree against the appellants, in the Circuit Court of Monroe county, for $7,277.40, which decree is sought to be reversed by this appeal.

It appears from the record in this case that Frederick William Rahe died testate prior to February 13, 1906, and that by the terms of his will he provided: First. "I order and direct that my executor hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be." Second. Is a devise of real estate therein described to Henry Rahe. Third. "I give and devise to Frederick Jobusch, as trustee, with directions to him as such testamentary trustee, to pay out of all cash moneys and notes as follows:

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

"First.   To pay my just debts which I may owe at the time of my death.

"Second.   To pay forty dollars for a tombstone.

"Third.   To pay to Anna Rahe, widow of my son, Henry Rahe, the sum of twelve hundred dollars when my grandson, Henry Rahe, becomes twenty-one years of age.   After paying the above, the balance of all cash and notes is to be divided equally between my grandchildren, Louis Rahe, Herman Rahe, George Rahe, Otto Rahe and Edward Rahe, to be paid to them by said Frederick Jobusch as trustee, when they attain their majority.   Lastly, I hereby nominate and appoint Frederick Jobusch to be the executor of this, my last will and testament, hereby revoking all former wills by me made."

On February 17, 1906, Frederick Jobusch was appointed and gave bond, which was approved by the court, and qualified as executor of said estate, and on May 8, 1906, filed an inventory of the real estate and personal property of said estate, and included in such inventory a note for the amount of $3,050, and interest, owing by himself and his wife Elizabeth Jobusch, to said estate.   That on May 5, 1908, he made a final report to the court as such executor and in the report charged himself with all moneys collected, including the note and interest owing by himself and wife; and credited himself with the moneys paid out, at which time it left in his hands a balance of $8,280.54, which report was approved by the court and the executor was ordered to pay Anna Rahe out of said sum the amount of $1,200 when Henry Rahe became twenty-one years of age, which the court found to be on April 2, 1908, and that the remaining balance of $7,080.54 be paid to the testamentary trustee, Frederick Jobusch, on entering into bond in the sum of $15,000; and on July 16, 1908, he filed in the office of the County Court a receipt as executor from Frederick Jobusch, testa-

mentary trustee, for the amount of $7,080.54, also a bond as such testamentary trustee for the amount of $15,000, which bond was approved and an order entered discharging said Frederick Jobusch as executor aforesaid.

There was evidence introduced pro and con tending to show solvency and insolvency of Frederick Jobusch during the time he was executor, which testimony will be hereafter examined and commented upon. This bill was filed by the appellees against the appellants and the sureties upon the bond given by Frederick Jobusch as testamentary trustee and other parties who were interested as legatees under the will. The bill with its amendments sets forth the facts substantially as above stated, and asks that the order discharging the executor be set aside, and a determination by the court as to whether the sureties upon the bond of Jobusch as executor, or those upon his bond as trustee, or both of them, are liable and to what extent, and for an accounting. Except as to the parties which were afterwards changed by order of this court, the bill more in detail is shown in the case of *People v. Jobusch,* 165 Ill. App. 540, which was heard by this court at a former term. To this bill an answer was filed by the appellants denying any liability as the makers of the executor's bond, and states that the executor made a final settlement and payment to Frederick Jobusch as trustee aforesaid and in the manner aforesaid. The sureties upon the bond as trustees deny liability because they say that the County Court had no authority to take such bond, and that the bond taken was void and that the liabilities were against Frederick Jobusch individually as such trustee.

The lower court in its decree determined that the executor and sureties upon his bond as such executor are liable for the total amount of the deficiency herein shown to exist, and to this the appellants preserve an exception.

A proper determination of the question as to the parties upon which bond or bonds, if any, are liable, will require a consideration of two propositions, the first of which is: Was the property devised received by Frederick Jobusch as executor of William Rahe, Sr., or as trustee under the will? The first clause directs the executor to pay all debts and funeral expenses. The third clause gives to Frederick Jobusch, as trustee, with directions to him as such testamentary trustee, to pay out of all cash, moneys and notes as follows: $40 for tombstone; $1,200 to Anna Rahe; and after paying the above the balance of all cash and notes to be divided equally between my grandchildren, naming them; to be paid to them by said Frederick Jobusch as trustee when they attain their majority. And the will concludes by appointing Frederick Jobusch as executor. It is contended by counsel for appellant that the effect of this will was to pass this property directly and immediately to Frederick Jobusch, as trustee, and that the title vested in said trustee subject only to the payment of the debts and funeral expenses. We cannot agree with this contention. Where a will creates an executor and also a trustee, and gives each of them power over the property, without specifying the particular property that each shall have jurisdiction over, we are inclined to think that the law would favor the settlement of the estate by the executor and ascertaining the amount that would pass to the trustee, which could only be done after the executor had completed his duties. "The law seems to favor the administration of the estate by the executor rather than by the trustee, and unless it clearly appears from the will that the testator intended it to be held by the trustee the executor is to be considered as holding it; and where the will provides for the coexistence of the two functions of executor and trustee, the persons exercising those duties do so as executors and not as trustees." Am. & Eng. Encyc. of Law, vol. 28, p. 936.

Under our statutes an executor could settle an estate, collect the debts and take care of doubtful claims with much better advantage to the estate than a trustee could, as our statutes give an executor or administrator, where a claim is doubtful or where there is some equitable or legal defense to any claim, the power, under such circumstances, to apply to the County Court for an order compounding such claims and selling them, which power is not given to a trustee. Section 83, ch. 3, of Hurd's Revised Statutes. (J. & A. ¶ 133.) This would be of much advantage to an estate and the courts are inclined to adopt that rule which would be most advantageous in the settlement of estates. It is said by our Supreme Court: "It is, of course, true that where the same person is executor and trustee, his duties in the two relations are separate and distinct and he does not take a fund as trustee until it is separated from the general funds in his hands as executor, but when his duties concerning a fund as executor are completed and his duties as trustee begin, it becomes his duty to hold the fund as trustee, and a court of equity will regard that as done which ought to be done." *Fenton v. Hall,* 235 Ill. 557.

Under the provisions of this will Frederick Jobusch was created executor and trustee and practically the same fund given to him in each capacity, and it seems to us that under such circumstances he chose to receive the property as executor and to act in that capacity in the settlement of the estate, that the will would not require him to take the property as trustee out of his hands as executor and administer it as trustee, and were some third person designated by the will as trustee instead of himself we feel quite sure that such third person could not devest him of the property as executor until a reasonable time had elapsed for a settlement of the estate. In this case there could be no doubt that Frederick Jobusch did assume the duties and take charge of these funds as executor. He gave

bond as such executor, filed an inventory of all of the property of the estate, charged himself with it as executor, and then proceeded to collect the notes as executor and made a final report showing that he had collected the several notes and claims inventoried and presented this report to the court, which was approved, and thereupon an order was made to pay the balance to him as testamentary trustee. We think this mode of procedure and investing of the property in the trustee, after a reasonable time has been given for settlement as executor, is well sustained by the case of *Bell v. People,* 94 Ill. 230. The fact of its having been adjudicated and determined by the County Court that this fund was held by Jobusch as executor is also of weight in determining in what capacity the fund was received and controlled by him. The cases of *People v. Huffman,* 182 Ill. 390; and *People v. Petrie,* 191 Ill. 497; *Weir v. People,* 78 Ill. 192, which hold, in substance, that the bond of an executor is not liable for a fund passed to a trustee, are not in our judgment in conflict with the conclusion herein arrived at, and while it is true it was held in the case of *Weir v. People, supra,* where Kraft was appointed administrator of estate of Jacob Britzer, Jr., and received a fund as such administrator, to which fund Jacob Britzer, Sr., was the sole heir, who died one month later leaving a will and appointing Kraft as executor, that Kraft thereafter paid no attention to the fund received as administrator but proceeded to treat the fund as belonging to Jacob Britzer, Sr., and held it as his executor and made no further account of it to the estate of Jacob Britzer, Jr., that the fund had passed to him as executor of the estate of Jacob Britzer, Sr., and that the bondsmen of the administrator of Jacob Britzer, Jr., were not liable. This case, however, was so determined principally because the fund held by Kraft as administrator belonged to the estate of Jacob Britzer, Sr., and that it was treated by the executor as having

passed from his hands as administrator of Jacob Britzer, Jr., to his hands as executor of Jacob Britzer, Sr., and we do not believe that this case is in conflict with the rule above announced. We are of the opinion that Jobusch held this fund as executor.

It is contended that after the settlement of the estate an order was entered by the County Court directing the payment of this fund to Jobusch as trustee and that thereafter he presented a receipt from himself as trustee, which was approved by the court and the executor and the sureties upon his bond were discharged. It is very clear from the evidence in this case that at the time Jobusch presented this receipt and secured an order discharging the sureties upon his bond that at that time he had no money or means with which to pay the amount that had been determined was in his hands, and that the procurement of this order was a fraud upon the court, and is by this proceeding sought to be set aside. We think that the court was warranted in holding, under the evidence, that this proceeding was a fraud upon the County Court, and that he did not err in setting aside this order.

The second proposition to be determined is as to the liability of appellants for the full amount less any payments since made, ascertained by the County Court to be due in this estate. The contention is that the note owing by Jobusch and his wife to the amount of $3,050, and interest, was in fact never paid, and for that reason the sureties upon the bond are not liable. We recognize the rule that the simple fact that a person becomes a surety upon an executor's bond does not make such surety liable for a debt that such executor may be owing to the estate. If, however, such executor owing said debt is able to pay the debt and he fails to collect it, then he fails in the discharge of his duties as required by law. ''Executors and administrators shall be chargeable with so much of the estate of the decedent, personal or real, as they after due and

proper diligence might or shall receive.'' Section 58, ch. 3, Hurd's Revised Statutes. (J. & A. ¶ 107.) Reasonable diligence was required of Jobusch to collect this debt even from himself and wife, and if it could have been collected by reasonable diligence and he failed to do so, then we think he is chargeable under this statute with the amount so lost to the estate. *Whitney v. Petticord,* 63 Ill. 249. This doctrine is recognized by appellants but they contend that Jobusch was insolvent all this time and that they could not have collected the debt from him; while the evidence shows that during this time he was largely indebted to other persons, and it may be that had his property been subjected to sale for the payment of his debts that it was doubtful if he was solvent but Jobusch thought his business was in good condition and never realized there was any question about his insolvency until 1909, at least one year after his report as executor had been approved, and the evidence shows that during this time he was the owner of a homestead of the value of $3,500, and stock of goods of the value of $10,000, and an undivided one-eighth interest in eight hundred acres of land, such interest being of the value of about $5,000, none of which was incumbered. He also had accounts upon his books to the amount of about $20,000, but there is no evidence as to the value of these accounts. Even if he was largely indebted, we think that the court was warranted in holding that under the circumstances he certainly could have made this money out of that property for this estate. If it were true that this was a doubtful or desperate claim against the estate, then it became his duty to make application to the court to compound and sell the claims, for it certainly was of some value, but he did not do this and we presume for the reason that he supposed it was good, and being so he certainly could have secured payment with the property he had on hand. In this case, however, there was an adjudication by the County Court made

upon the final report, that the executor had in his hands for distribution, $8,280.54, and he was directed how to distribute the same, and we think that this order must be conclusive not only upon the executor but upon his sureties and cannot be attacked except for fraud, and we see no evidence of fraud up to that date in this record. "Where a report is made by an administrator or executor, and there has been an adjudication by the court approving that report and ordering payment from the funds in the hands of such administrator, that judgment is evidence that is conclusive on such administrator or executor, as also upon his sureties, by the express provisions of section 115, of ch. 3 of the Revised Statutes. (J. & A. ¶ 165.) Upon failure to pay over in accordance with such order of the court, the executor or administrator is guilty of a *devastavit,* and suit may be instituted upon the bond of such officer. Such suit is on the bond and judgment itself, and such judgment, when offered in evidence, showing the approval by the court and order to pay over, is like any other judgment of a court of competent jurisdiction, that cannot be attacked in such collateral action except for fraud. *Ralston v. Wood,* 15 Ill. 159; *Housh v. People,* 66 id. 178; *Frank v. People,* 147 id. 105." *People v. Huffman,* 182 Ill. 407.

We believe that the lower court was warranted in holding the sureties upon the executor's bond liable for such part of that fund as had not been paid.

Counsel for appellant in his reply brief says that the amount decreed to be paid was at all events $400 too much, but he does not point out how he arrives at that conclusion or wherein any error was made but after a computation of the interest upon the amount left, after deducting payments, we do not find such error to exist.

After a careful consideration of this case we are not able to say that the court committed any error in its findings and its conclusions and the decree of the lower court is affirmed.

*Decree affirmed.*