In the Matter of the Estate of MARY KILLAN, Deceased.
MARTIN KILLAN, Appellant; MILES T. O'REILLY, Respondent.

1. SURROGATE'S COURT — APPEAL — WHEN CONCLUSIONS OF LAW
FOUND IN SUPPORT OF DECREE SETTLING AN INTESTATE'S ESTATE
REVIEWABLE IN COURT OF APPEALS.   Exceptions to a surrogate's con-
clusions of law, in dismissing a proceeding in a Surrogate's Court,
present questions of law which are reviewable by the Court of Appeals
upon an appeal from an order of the Appellate Division affirming the
decree of the Surrogate's Court entered upon and in accordance with such
conclusions of law.

2. SAME — JUDICIAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS VOID
AS AGAINST INTERESTED PARTIES NOT CITED OR APPEARING THEREON
— EFFECT OF CODE CIV. PRO. §§ 2518-2523.   A judicial settlement of
the accounts of an administrator of an estate is void as against persons
interested in the estate, within the meaning of the statute (Code Civ. Pro.
§ 2514, subd. 11), whether known or unknown, who were not duly cited
to appear, or did not appear voluntarily at such judicial settlement; since
the Code of Civil Procedure (§§ 2518-2523) provides ample protection to

such administrator by permitting him to sue out a citation running against persons unknown.

3. UNKNOWN BROTHER OF AN INTESTATE NOT CITED OR APPEARING AT JUDICIAL SETTLEMENT OF ESTATE, MAY INSTITUTE PROCEEDINGS FOR NEW ACCOUNTING UPON NOTICE TO PARTIES INTERESTED AND PROOF OF HIS RELATIONSHIP. A person residing in a foreign country and claiming to be the brother and only next of kin of an intestate, in whose estate there has been a judicial settlement of the accounts of the administrator, to which claimant was not cited and was not a party, is entitled to institute a proceeding in the Surrogate's Court against the administrator for a new accounting under the provisions of the statute (Code Civ. Pro. § 2726, subd. 1, and § 2727), and to an order that a commission issue, with interrogatories, for the examination of the petitioner and his witnesses; and it is reversible error to dismiss such proceeding and deny the application for a commission and remit the petitioner to a motion to open the decree in such judicial settlement, addressed to the discretion of the Surrogate's Court; the proper practice is not to dismiss the proceeding, but to require the petitioner to amend his citation and bring in the parties who were cited or appeared on the original accounting, that all of such parties may join in the application for a commission and be represented at the execution thereof; the petitioner, if he succeeds in establishing that he is a brother of the intestate, may then have an accounting under the provisions of the Code invoked by him.

*Matter of Killan*, 66 App. Div. 312, reversed.

(Argued October 9, 1902; decided December 9, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, made November 12, 1901, which affirmed a decree of the Monroe County Surrogate's Court dismissing proceedings instituted by the appellant herein for a judicial settlement of the accounts of the respondent herein as administrator of the estate of Mary Killan, deceased, and also denying an application for a commission to issue to take testimony in a foreign country.

The facts, so far as material, are stated in the opinion.

*George D. Peck* and *Myron D. Short* for appellant. The proceeding which resulted in the alleged decree of February 7, 1900, was not binding or in any way conclusive upon the appellant, as the Surrogate's Court acquired no jurisdiction

of his person. He was not cited therein, neither did he appear. (*Matter of Killan*, 66 App. Div. 312; Code Civ. Pro. §§ 2742, 2743; 1 Freem. on Judg. [4th ed.] 277, § 154; *Hood* v. *Hood*, 19 Hun, 300.) The decree of February 7, 1900, being absolutely void and inoperative as to the appellant, he was at liberty to wholly disregard it. (*Beardslee* v. *Dolge*, 143 N. Y. 165; *Ferguson* v. *Crawford*, 70 N. Y. 254; *Dutton* v. *Smith*, 10 App. Div. 568; 1 Freem. on Judg. [4th ed.] §§ 117, 120a; *Julian* v. *Woolsey*, 87 Hun, 326; *Matter of Kimball*, 18 App. Div. 320; Redf. on Surrogate's Courts [5th ed.], 826.) The remedy and proceeding so instituted by petition and citation by the appellant in the Surrogate's Court was the proper one and the one expressly authorized by statute. (Code Civ. Pro. §§ 2726, 2727; Jessup's Surr. Pr. 1304; Redf. on Surrogate's Courts [5th ed.], 768; 1 Freem. on Judg. [4th ed.] 347, § 190; *Hood* v. *Hood*, 19 Hun, 300; 85 N. Y. 561; *Dutton* v. *Smith*, 10 App. Div. 566; *Matter of Lamb*, 19 Misc. Rep. 638; *Jenkins* v. *Young*, 35 Hun, 569; *Denton* v. *O. C. Nat. Bank*, 150 N. Y. 126; *Jackson* v. *Brown*, 3 Johns. 459; *Foote* v. *Lathrop*, 41 N. Y. 558, 561; *Matter of McCunn*, 15 N. Y. S. R. 712; *People ex rel.* v. *Brown*, 103 N. Y. 684; *Matter of Baldwin*, 87 Hun, 372.) To require the appellant to adopt as his only remedy in this case a motion addressed to the discretion of the Surrogate's Court is to deny him due process of law. (*People ex rel.* v. *Supervisors*, 70 N. Y. 228; *Ward* v. *Boyce*, 152 N. Y. 191; 2 Kent's Comm. 13; *Happy* v. *Mosher*, 48 N. Y. 313; *Jenkins* v. *Youngs*, 35 Hun, 569; *People* v. *Dunn*, 157 N. Y. 528; *People* v. *Sickles*, 156 N. Y. 541.) The surrogate erred in taking judicial notice of the proceedings upon the alleged former accounting. (1 Greenl. on Ev. [15th ed.] §§ 522, 523; *Matter of Baldwin*, 87 Hun, 372, 377; *Matter of McCunn*, 15 N. Y. S. R. 712; 17 Am. & Eng. Ency. of Law [2d ed.], 926.)

*James M. E. O'Grady* for respondent. The procedure indicated by the decision of the surrogate and the Appellate

Division is the correct procedure. (Code Crim. Pro. § 2481, subd. 6; *Bolton* v. *Schriever*, 135 N. Y. 65; *Staples* v. *Fairchild*, 3 N. Y. 41; *Roderigas* v. *E. R. S. Inst.*, 63 N. Y. 460; *Welch* v. *N. Y. C. & H. R. R. R. Co.*, 53 N. Y. 610; *Seaman* v. *Whitehead*, 78 N. Y. 306; *Vreedenberg* v. *Calf*, 9 Paige, 128; *Matter of Hood*, 90 N. Y. 512; *O'Connor* v. *Huggins*, 113 N. Y. 511; *Matter of Lamb*, 10 Misc. Rep. 638; *Matter of Hawley*, 100 N. Y. 206.) The court committed no error in taking judicial notice of the decree of February 7, 1901. (Code Civ. Pro. § 2472, subd. 4; *Matter of Underhill*, 117 N. Y. 471; *Bearns* v. *Gould*, 77 N. Y. 459; *Harris* v. *Clark*, 87 N. Y. 572; *Kelly* v. *West*, 80 N. Y. 139.)

BARTLETT, J. The petitioner, as the alleged brother and only next of kin of the intestate, proceeds under section 2726, subdivision 1, and section 2727 of the Code of Civil Procedure, which provide that a judicial settlement of the accounts of an administrator may be compelled by the next of kin, or any party in interest, after the expiration of one year from the issuance of letters of administration. The Code defines who is a "person interested" as follows: "The expression, 'person interested,' where it is used in connection with an estate or a fund, includes every person entitled, either absolutely or contingently, to share in the estate or the proceeds thereof," etc. (Code Civ. Pro. § 2514, subd. 11.)

Mary Killan died intestate at Rochester on the 24th day of August, 1898. In the following October letters of administration were issued to Miles T. O'Reilly as a creditor, on his own behalf, he being the undertaker who attended to the funeral, etc., of the deceased.

The decedent left personal property amounting to the sum of $1,514.77.

In December, 1899, proceedings were instituted to settle the accounts of the administrator, and certain persons appeared who claimed to be cousins of the intestate. The administrator contested these claims, and the surrogate after trial adjudged

and. decreed that claimants were cousins of the intestate, her only heirs at law and next of kin and entitled to share in her estate.

In February, 1900, the surrogate made his decree, adjudging and commanding the administrator to distribute the estate to these cousins after payment of debts, expenses, commissions, etc.

In January, 1901, this petitioner, Martin Killan, residing in Ireland, filed his petition in the Surrogate's Court of Monroe county, in which he claimed to be the sole next of kin of the intestate, and after setting forth the issuing of letters of administration, alleged that no accounting had been made by the administrator and asked for a citation directing him to show cause why he should not render an account. This petition is based on the fact that the petitioner was not a party to the proceedings for accounting and distribution although a brother of the intestate. Thereupon citation was duly issued by the Surrogate's Court and the administrator appeared and served his answer to the petition, wherein he set forth the accounting proceedings and his due discharge; also denied that petitioner is a brother of the deceased. Thereafter petitioner moved for an order that a commission issue authorizing him to examine the petitioner therein and eight other witnesses upon interrogatories and to make certificate of the same to the Surrogate's Court. The motion was denied and this proceeding dismissed, with costs, and a decree and order entered to that effect, which the Appellate Division affirmed on appeal.

The learned surrogate, on dismissing the proceeding, delivered an oral opinion, in part, as follows : " The court holds that the proceedings upon the judicial settlement of the administrator are before the court, of which it takes judicial notice, by which it appears that there has been a judicial settlement of the accounts of the administrator of this estate *to which claimant was not a party. He was neither cited nor did he appear.* The court further holds that the decree made therein *is entirely inoperative as to this claimant,* but that the court

having acquired jurisdiction of the subject-matter of the judicial settlement and the estate having been settled in that proceeding, it is incumbent upon this claimant to now come in under that proceeding by petition or otherwise and ask that it be opened, giving notice to the persons who then appeared and were affected by that decree, and that the administrator cannot be compelled to account independently, he having already accounted and his account being filed and before the court, at the instance of any number of claimants who may invoke the aid and process of the court for that purpose."

The Surrogate's Court made the following findings, among others : " That the hearing upon said motion was continued until the 7th day of April, 1901, upon which occasion said petitioner appeared by counsel and said administrator appeared by counsel and moved that the application for the order be denied and that the proceedings for the accounting be dismissed."

" It appears from the proceedings upon the judicial settlement of the accounts of the administrator which are before the court and of which the court takes judicial notice, that there has been a judicial settlement of the accounts of the administrator of this estate *to which the claimant was not a party;* that the court acquired jurisdiction of the subject-matter of the judicial settlement and the estate has been settled in that proceeding."

The surrogate made three conclusions of law, the third of which reads as follows : " That the order that a commission issue to (naming commissioner), authorizing him to examine the petitioner herein, and also (naming eight witnesses) as witnesses for the petitioner, under oath, upon interrogatories to be annexed to such commission, and to take and certify the depositions of the petitioner and of such witnesses and to return the same with the commission through the post office or according to the directions therein or therewith given, be and the same hereby is denied ; and that the proceeding against the administrator for a new accounting be and the

same hereby is dismissed, and that the said administrator have twenty-five dollars costs and his disbursements."

The petitioner duly excepted to these conclusions of law, and we thus have presented the question whether the dismissal of this proceeding can be justified as matter of law. The dismissal of the proceeding resulted in a final decree. (*Village of Champlain* v. *McCrea*, 165 N. Y. 264.)

Under these findings the decree of the Surrogate's Court in the original accounting proceeding is void as to this petitioner.

"It is an elementary principle, recognized in all the cases, that to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that the court should have jurisdiction of the person as well as of the subject-matter, and that the want of jurisdiction over either may always be set up against the judgment when sought to be enforced, or any benefit is claimed under it." (*Ferguson* v. *Crawford*, 70 N. Y. 253, 256; *Hood* v. *Hood*, 85 N. Y. 578.)

In Freeman on Judgments (4th edition, vol. 1, § 117) the learned author says: "A void judgment is in legal effect no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void."

The only question presented by this appeal is whether the petitioner was liable to have his proceeding for an accounting dismissed and he remitted to a motion to open the decree in a proceeding absolutely void *as to him*.

It is well settled that an application to a court to open its judgment is always addressed to its sound discretion, and that the denial of the motion involves no substantial right.

In *Foote* v. *Lathrop* (41 N. Y. 358, 361) it was held that an order of the Supreme Court denying a motion to set aside a regular judgment in that court upon the ground that the defendant was not served with process, and the appearance for him was wholly unauthorized, is not appealable to this

court; that no party has a substantial right, within the mean-
ing of the Code, to have a regular judgment against him set
aside on motion; that it is in the discretion of the court, in
which such judgment was rendered, to set it aside or not;
and even if void they may leave the party affected by it to
show it so in a proper action.   Judge GROVER said : " It
would still rest in the discretion of the court whether to enter-
tain a motion to vacate the judgment, or leave her to show the
judgment void, as to her, whenever interposed as an obstacle
to her pursuit of her right to the land."   This case was fol-
lowed in *Beards* v. *Wheeler* (76 N. Y. 213) and *People ex
rel. Brush* v. *Brown* (103 N. Y. 684).

In *Estate of McCunn* (15 N. Y. State Reporter, 712) this
point was involved.   An executor of an estate filed an account
on which a decree was entered.   Some years later he filed a
second account, citing therein certain grandnieces of the
deceased who were not parties to the first accounting.   These
grandnieces moved to open the decree on the first accounting
on the ground that they had not been made parties.   Surro-
gate ROLLINS of New York, in denying the motion, said : " I
am referred to no decided cases which support the notion that
persons not parties to an accounting proceeding and not bound
by the decree therein, pursuant to section 2742 of the Code,
can successfully claim that such decree be opened under cir-
cumstances like the present."

The learned courts below erred in holding that the peti-
tioner was not entitled to maintain the proceedings instituted
by him and that he must seek his remedy by a motion, which
is merely an appeal to the discretion of the court.   The peti-
tioner is asking no favor, but is enforcing a substantial right,
if it be true that he is a brother of the intestate.

The surrogate was undoubtedly right in suggesting that the
petitioner should give notice to the persons who appeared in
and were affected by the original proceedings.   The proper
practice was not to dismiss the proceeding instituted by this
petitioner, but to require him to amend his citation and bring
in the parties who were cited or appeared on the original

accounting.    The petitioner having complied with this require-
ment would be in a position to apply for a commission with
interrogatories, and the parties cited could join therein and be
duly represented at the execution thereof.    The citation
should be amended as suggested.    If the petitioner succeeds
in establishing that he is a brother of the intestate he is
entitled to an accounting under the provisions of the Code
which he has invoked.

The respondent has argued a number of points that possibly
should receive special consideration, although most of them
are covered by that which we have already said and the
authorities cited.

We have the positive finding of the Surrogate's Court that
the petitioner in this proceeding was not cited in the account-
ing proceedings and was not a party thereto, and that the
same was wholly inoperative as to him.    It is at this point
that we encounter the defect in the administrator's proceed-
ings for an accounting that has led to his present peril of
being called on to account for funds paid out under a decree
that does not protect him against this petitioner if the latter
establishes the fact that he is intestate's brother.

It is argued that it would be a strange miscarriage of jus-
tice if the administrator, after having proceeded to an account-
ing and obtained a decree directing him to pay over to certain
parties, could be compelled to again account in an independ-
ent proceeding on the petition of some one claiming to be
nearer of kin than those cited or appearing in the prior pro-
ceedings, and consequently entitled, if the claim is established,
to the personal property of the testator.

We have presented here the ordinary situation of a person
not joined as a necessary party in an action or special proceed-
ing ignoring the judgment therein, and proceeding, as this
court said he might in *Foote* v. *Lathrop* (41 N. Y. 358, 361),
to show the judgment void when interposed as an obstacle to
the remedy he has invoked.

An administrator is not left in the helpless and unprotected
position that is assumed to be the case in the argument of the

respondent. The Code of Civil Procedure provides for his ample protection by permitting him to sue out a citation running against persons unknown. (§§ 2518–2523.) A citation properly issued under these provisions binds unknown next of kin precisely as if they were named therein. There is no evidence in the record that any effort was made to cut off unknown next of kin, and the citation that was issued is not before us. On the contrary, as already pointed out, it is expressly found that the petitioner was not a party to the former proceeding. This administrator is in the position of any plaintiff who proceeds to judgment without joining all of the necessary parties defendant.

The effect of the judicial settlement of an account is stated in section 2742 of the Code: "A judicial settlement of the account of an executor or administrator, either by the decree of the Surrogate's Court, or upon an appeal therefrom, is conclusive evidence against all the parties *who were duly cited or appeared*, and all persons deriving title from any of them," etc.

It follows that the decree in the accounting proceeding binds only the parties thereto, and the administrator not having cut off unknown next of kin is liable to respond to any claim that one or more of them may successfully make.

The respondent has cited a number of cases relating to the jurisdiction of the court as to the subject-matter, apparently overlooking the fact that no question is raised on this appeal as to the jurisdiction of the Monroe County Surrogate's Court of the estate of the intestate.

The contention of the appellant is that the court acquired no jurisdiction of his person, and the record conclusively supports this position.

We are referred to Mr. Redfield's Surrogate Practice (p. 865, fifth edition), where he discusses the subject of evidence of jurisdictional facts. The learned author observes: "The rule is stated to be that 'when certain facts are proved to a court or officer, having only special and limited jurisdiction, as a ground for issuing process, and there is a total

defect of evidence as to any essential fact, the process will be void; but where the proof has a legal tendency to make out a proper case, in all its parts, for issuing the process, then, although the proof may be slight and inconclusive, the process will be valid until set aside by a direct proceeding for that purpose.' "

This quotation is from *Staples* v. *Fairchild* (3 N. Y. 41). This case involved the regularity of certain attachment proceedings and discusses the powers of courts of limited jurisdiction. It is a direct authority in favor of the petitioner herein on the point that the court acquired no jurisdiction of his person. The learned judge says: "It is well settled that when certain facts are to be proved to a court having only such a jurisdiction, as a ground for issuing process, if there be a total defect of evidence as to any essential fact, the process will be declared void, in whatever form the question may arise."

It is unnecessary to discuss the other cases cited in detail, as they have no bearing upon the failure to obtain jurisdiction of the person of the petitioner.

The much-discussed and overruled case of *Roderigas* v. *East River Savings Institution* (63 N. Y. 460) is cited, wherein it was determined in a Surrogate's Court that the intestate was dead, when in fact the contrary was true. The same case was before this court in another phase (76 N. Y. 316), where it was held that the basis of the former decision was that the statute authorized the surrogate to decide upon evidence, and that it now appeared that there was nothing amounting to proof.

In *Scott* v. *McNeal* (154 U. S. 34) this case was expressly overruled as violating the fourteenth amendment of the Constitution of the United States, which ordains, among other things, " nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The court said: "In *Roderigas* v. *East River Savings Institution* (63 N. Y. 460); in 1875, a bare majority of the

Court of Appeals of the State of New York decided that the
payment of a deposit in a savings institution, to an adminis-
trator under letters of administration, issued in the lifetime of
the depositor, was a good defense to an action by an adminis-
trator appointed after his death, upon the ground that the
statutes of the State of New York made it the duty of the
surrogate, when applied to for administration on the estate of
any person, to try and determine the question whether he was
living or dead, and, therefore, his determination of that ques-
tion was conclusive.  *  *  *  And in a subsequent action
between the same parties, in 1879, the same court unanimously
reached a different conclusion, because evidence was produced
that the surrogate never in fact considered the question of
death, nor had any evidence thereof — thus making the validity
of the letters of administration to depend, not upon the ques-
tion whether the man was dead, but upon the question whether
the surrogate thought so. (*Roderigas* v. *East River Savings
Institution*, 76 N. Y. 316.)  *  *  *  No judgment of a
court is due process of law if rendered without jurisdiction in
the court, or without notice to the party.  The words 'due
process of law,' when applied to judicial proceedings, as was
said by Mr. Justice FIELD, speaking for this court (*Pennoyer*
v. *Neff*, 95 U. S. 714, 733), 'mean a course of legal proceed-
ings according to those rules and principles which have been
established in our system of jurisprudence for the protection
and enforcement of private rights.  To give such proceedings
any validity there must be a tribunal competent by its consti-
tution — that is, by the law of its creation — to pass upon the
subject-matter of the suit; and if that involves merely a deter-
mination of the personal liability of the defendant, he must be
brought within its jurisdiction by service of process within
the State or his voluntary appearance.'" (See, also, *Lavin* v.
*Emigrant Industrial Savings Bank*, 18 Blatch. 1, 24, U. S.
Circuit Court, Southern District of New York.)

In the case at bar it was essential not only that the court
should have jurisdiction of the subject-matter, but of the
person of petitioner.

The Code of Civil Procedure (§ 2473) provides, in terms, that there is a presumption of jurisdiction where the necessary parties were duly cited or appeared, when a decree or other determination is drawn in question collaterally.

The argument of the respondent, in brief, is that it was sufficient if the court had jurisdiction of the subject-matter, to sustain the position that the petitioner must resort to the accounting proceeding if he desired to enforce his rights in the Surrogate's Court.

The respondent further argues that not only is the present proceeding unauthorized on behalf of the petitioner, but that he has an absolute right to intervene in the accounting proceedings, open the same on motion and litigate his rights therein.

We have already pointed out that the motion to open the proceedings is an appeal to the discretion of the court, and that the petitioner herein could not be remitted to an uncertain remedy in a proceeding which resulted in a decree that does not bind him.

It is further argued that assuming it to be an appeal to the discretion of the court, nevertheless, the Surrogate's Court did exercise its discretion, and decided that the petitioner might intervene in the accounting proceeding.

The record before us discloses no such decision, as the learned surrogate simply intimated in his oral opinion that it was incumbent upon the petitioner to come in under the accounting proceedings by petition or otherwise and ask that it be opened ; there is no intimation as to what disposition the court would make of that motion.

We, however, regard this as wholly immaterial, as the decree in the accounting proceedings, for reasons already stated, is absolutely void as to this petitioner.

It is contended that the petitioner instead of instituting the present proceedings, might have filed a bill in equity, bringing in all the parties and securing such a judgment as justice dictates.

It is of no importance whether the new issue as to the peti-

tioner being a brother of the intestate is tried in this proceeding, or in the former accounting proceedings, or in a suit in equity, as the result must be the same in case he succeeds in establishing his claim, so far as the administrator is concerned.

It is argued that the Surrogate's Court would have no authority to render a decree compelling the distributees of the fund to make restitution of the same to the petitioner; nor could it vacate its former decree in the premises, having no equity powers.

We hold that the petitioner was at liberty to invoke one of two remedies; he could require the administrator to account in this proceeding, or he might have summoned him and all the parties in interest into a court of equity for a like purpose. The prior accounting proceedings in no way concern the petitioner, as he will be entitled, if he succeeds in establishing his identity as a brother of the intestate, to her entire personal estate after debts and expenses of administration are paid.

We express no opinion as to the limitations, if any, which restrain the Surrogate's Court in rendering a decree in this proceeding if the petitioner is successful. The latter has chosen his forum and must content himself with such relief as can be afforded him therein.

The administrator having entered and obeyed a decree of distribution that does not bind the petitioner cannot invoke it as a shield at this time. If he is subjected to loss by reason of this fact it is due wholly to his failure to avail himself of the protection which the law afforded him.

The suggestion that no question of law is presented by this appeal is disposed of by the exception to the surrogate's conclusions of law, to which reference has already been made.

The order of the Appellate Division, and the decree of the Surrogate's Court of Monroe county therein affirmed, should be respectively reversed, with costs in all the courts to petitioner to abide the event, payable out of the estate, and the case remitted to said Surrogate's Court to proceed in accordance with the views herein expressed.

O'Brien, J. (dissenting).    The order from which this appeal is taken dismissed an application by the petitioner to the surrogate to compel an administrator to account after he had been discharged and after he had already distributed all the estate under and in obedience to an order or decree of the surrogate directing such distribution.    The petitioner claims that the former decree directed distribution to the wrong parties and that he is, in fact, the sole next of kin of the deceased who was entitled to the estate.    It is important to note at the outset that the order of the surrogate dismissing the application does not state whether it was dismissed for want of power to entertain the, proceeding or in the exercise of discretion.

On the 24th of August, 1898, one Mary Killan died, intestate, in the city of Rochester, leaving personal propery of the value of about fifteen hundred dollars.    One Miles T. O'Reilly, a creditor of the deceased, petitioned for letters of administration upon her estate, and they were granted to him by the surrogate of Monroe county.    More than a year thereafter the administrator petitioned for a settlement of his accounts and the surrogate issued a citation directed to the next of kin · and heirs at law, creditors and persons interested in the estate of the deceased to attend a judicial settlement of the administrator's accounts on the 30th day of December, 1899.    The citation was duly served by publication, and on the return day thereof there appeared five persons who claimed to be cousins of the deceased and entitled to the distributive share of her estate.    The administrator denied their relationship, whereupon an issue of fact was formed and tried, in which the surrogate adjudged and decreed that they were in fact cousins of the deceased, and the only heirs at law and next of kin living.    He ordered the administrator to make distribution accordingly, which he did, and having filed his receipts with the surrogate a decree was entered discharging the administrator from his trust.    It will be seen that this proceeding involved a decision of the issue of fact as to what persons constituted the sole next of kin of the deceased.    The five cousins alleged that they were the sole next of kin and the

36

administrator denied it. In determining the issue the surrogate decided that the five cousins were, in truth, the sole next of kin, and before he could reach that conclusion he had to determine that the deceased died leaving no parent, child, brother or sister, since the cousins could not be the sole next of kin if she had left any nearer relative. The surrogate had jurisdiction of the question to be decided. He had jurisdiction of the fund to be distributed. He had jurisdiction of the administrator and the five cousins; therefore, it would seem that his decree of distribution was made with perfect jurisdiction of the subject-matter and of the parties, and so long as that decree stands it is obviously a bar to this proceeding.

If, upon that hearing, the surrogate had found and adjudged that the deceased left a brother surviving, and that the present petitioner was that brother, and that as such he was the sole next of kin and entitled to have the estate distributed to him, no one, I think, can doubt that it would be a perfect judgment in his favor, available to him and good as against all the world until opened, reversed or set aside, although he was not a party; and for the plain reason that the court had power to make it, and if he had power to render a judgment in his favor he had the same power to render it against him and in favor of the five cousins, and the judgment has the same binding effect in the one case as in the other until vacated or reversed in some direct proceeding for that purpose.

About a year after the discharge of the administrator the petitioner, who signs his name as Martin *Killeen*, a different name from that of the deceased, and a resident of Ireland, filed a petition with the surrogate alleging that he was a brother of the intestate. His petition set forth the issuing of letters to the administrator, claimed that no account had been made and asked for a citation directing him to account. Thereupon a citation was issued directing the administrator to show cause why he should not render an account, and on the return day, January 23, 1901, the administrator filed an answer setting forth his accounting in the estate, the order

of distribution, compliance with that order, the filing of
receipts from the distributees and a decree of judicial set-
tlement and discharge; he also denied Killeen's relation-
ship with the deceased. An issue of fact was thus joined
between the petitioner and the administrator, and the former
was bound to show that he was, as he claimed to be, the
brother of the deceased. The petitioner subsequently made
application to the surrogate for a commission to take testi-
mony in Ireland to establish his relationship, and a hearing
was then had on the whole question with respect to the peti-
tioner's right to an accounting. The surrogate denied his
application for a commission to take testimony and also his
application for an independent accounting, on the ground,
among others stated in his opinion, that the relief to which he
was entitled, if any, was to open the decree already entered,
on notice given to the persons affected thereby, and the
Appellate Division unanimously affirmed the order of the
surrogate. The petitioner was not cited by name, and the
surrogate found he was not a party to the prior proceedings
in the Surrogate's Court, under which the estate was dis-
tributed and the administrator discharged, and his claim is
that he has an absolute right to institute an independent pro-
ceeding against the administrator for an accounting in the
same manner as if no accounting had ever been had, and the
question involved in this case is whether the former decree of
discharge does not protect the administrator against this pro-
ceeding and remit the petitioner to an application to open the
decree or some other remedy. The contention in behalf of
the petitioner is, that the former decree of distribution was
absolutely void as to him, and of no more effect with refer-
ence to this proceeding than if it had never been made. This
seems to me to be the radical and fundamental error that per-
vades the whole argument in support of this appeal. It is a
general and universal rule that, where general jurisdiction is
given to the Surrogate's Court over such a subject, and that
jurisdiction depends in a particular case upon facts which
must be brought before the court for its determination upon

evidence, and where it is required to act upon such evidence, its decision upon the question of jurisdiction, as against all the world, is conclusive until reversed, revoked or vacated, so far as to protect its officers and all other innocent persons who acted upon the faith of it. It frequently happens that a surrogate makes an order or decree in which the wrong party is appointed, or administration is granted even in cases where the person alleged to be dead is still living, but as that court has jurisdiction to inquire with reference to all these facts, its orders and decrees have been held to be conclusive, even when infected with a radical error of fact, at least until revoked, vacated or set aside. (*Kelly* v. *West*, 80 N. Y. 139; *Roderigas* v. *East River Sav. Inst.*, 63 N. Y. 460; *Bolton* v. *Schriever*, 135 N. Y. 65; *Staples* v. *Fairchild*, 3 N. Y. 41; *Potter* v. *Ogden*, 136 N. Y. 384; *Porter* v. *Purdy*, 29 N. Y. 106; Redf. Law & Pr. of Sur. Ct. [5th ed.] 865.) In this case it is very clear that the surrogate had jurisdiction to decide as to what persons, as matter of fact, constituted the sole next of kin of the deceased and he did decide that the five cousins were, and involved in that decision is the finding that the deceased died leaving no parent, child, brother or sister, since the cousins could not be the sole next of kin if she died leaving any nearer relative. What the petitioner wants is an opportunity to retry that question. He claims that he has new evidence on the point which, if received, would show that the former finding of the surrogate in favor of the five cousins was an error of fact. He has a right to be heard and to give that evidence, but not in an independent proceeding which utterly ignores what had been decided before. The surrogate in deciding that the five cousins were the sole next of kin acted judicially, and his jurisdiction thus adjudged cannot be impeached collaterally. It can be attacked only directly in a proceeding for that purpose or by appeal. If it were otherwise and the petitioner were to succeed in his application for an independent accounting and establish his relationship as a brother of the deceased the effect would be to have two decrees of distribution in one estate to entirely

different parties made by the same court. In this case we would have one decree directing distribution to be made to the five cousins and another decree made after the administrator had been discharged directing distribution to the petitioner. Moreover, if this proceeding can be entertained the administrator, although he has accounted and distributed the fund under the order of the surrogate, must again account and pay over again to the new claimant. But that is not all. If, after responding to that demand, another party should appear claiming that he was the husband of the deceased and as such entitled to the personal estate in preference to all other relatives and the claim should be entertained and established in an independent proceeding, the administrator would have to respond for a third time for the estate that came to his hands. Thus, the administrator would be compelled to litigate during his life with genuine or spurious claimants for an estate that he had once distributed under an order of the court that unquestionably had jurisdiction and whose decrees he was bound to obey.

The well-considered case of *Exton* v. *Zule* (14 N. J. Eq. 501) is identical in its facts with this case. There, as in this case, a new claimant without notice claimed that distribution of the estate was made to the wrong parties in disregard of his rights without notice of a hearing to him, and the court very properly said : " It may be true that neither the first nor the second set of claimants are the real next of kin of the intestate, and that the parties actually entitled are yet undiscovered. But this will not authorize the Orphan's Court, upon every new ray of light that may be received, to set aside their own decree lawfully made and compel the administrator to pay the estate over again to every new claimant. It is the duty of the court before the decree of distribution is made to see that the case is clearly proved. If there be reasonable room for doubt as to the rights of the parties the decree should be denied. When once made and not appealed from, it operates as an effectual shield to the administrator and protects him against all other claimants. If a party entitled to a

distributive share is by the decree deprived of his rights without actual notice and without a hearing, his only remedy is against the distributees who have received the estate." (p. 514.)

I think this proceeding was not authorized by any law of this state and that the decisions of the courts below to that effect are clearly right. It is a case where the petitioner has mistaken his remedy. He has a right to open and intervene in the proceeding that resulted in a decree of distribution and the discharge of the administrator. There are other remedies to which the claimant could resort. By the provisions of the Code, section 2482, authority is conferred upon the surrogate "to open, vacate, modify or set aside, or to enter as of a former time a decree or order of his court * * * for newly-discovered evidence, clerical error or other sufficient cause." The petitioner could have invoked, and was bound to invoke, this power if he desired to be heard with respect to his claim. There is but one answer to this proposition, and that is that since it was in the discretion of the surrogate to grant or refuse such an application the claimant was not bound to resort to it. While some of the powers conferred upon the surrogate by this section undoubtedly are discretionary, the petitioner had the absolute right to intervene, and the surrogate had no discretion to refuse his application, since he claimed to own the estate and was deprived of his property by a decree to which he was not a party. It is quite conceivable that under our probate laws administration may be taken out upon the estate of a living person and his property distributed under a decree, but if that person, after the decree was entered, appeared before the Surrogate's Court with proof that he was the person alleged to be dead and whose property was distributed, demanding that the decree be opened or set aside, he would be entitled to a hearing and the relief as an absolute right. Any other view would lead to consequences most unjust and absurd. There are various analogous provisions of law on this subject which show that a party situated as this claimant is, or claims to be, has an absolute right to

intervene. By section 445 of the Code, where service is made by publication and there is no appearance, it is provided that a party *must* be admitted to defend if he applies within seven years after the filing of the judgment roll where there has been no personal service upon him of a written notice of the entry of the judgment. The right secured by that section is not subject to discretion. (*People* v. *Albany & V. R. R. Co.*, 77 N. Y. 232; *Earle* v. *Hart*, 20 Hun, 75.) But even if it be true that the right to open the former decree and to be heard was subject to the discretion of the surrogate, that question has no application to this appeal, since the discretion was exercised in favor of the claimant and he was permitted to come in and try the question as a party to the first accounting; therefore, so far as this claimant is concerned, it is of no consequence whether the right which was conceded to him at the hearing was absolute or discretionary.

The surrogate, on the accounting, had an issue of fact to try, and that was whether the five cousins of the deceased to whom the estate was distributed were, in fact, the sole next of kin of the deceased. He found that they were, and, therefore, he necessarily found that the claimant is not her brother. Now, the fact may have been determined erroneously and against the truth, but it cannot be denied that the surrogate had complete jurisdiction of the question, and if there was any error at all in his decision it was an error of fact and the claimant had and still has an absolute right to appeal from that decision of the surrogate and from the decree of distribution either for an error of law or fact or both, and on the hearing of that appeal he has an absolute right to give proof to show that he is the sole next of kin and that the five cousins are not. (Code Civ. Pro. §§ 2568, 2569, 2576, 2586.) With these remedies open to the petitioner it is very difficult for me to see that the surrogate committed an error of law reviewable in this court for refusing to entertain this proceeding. The Supreme Court has concurrent jurisdiction of matters of accounting by administrators and the petitioner had a right to bring an action for that purpose. If that court had

ordered distribution and discharged the administrator, as the surrogate did, no one, I think, would claim that the decree was void, or that the claimant, though not served, had any other remedy than to apply to open the decree and come in to defend and prove his claim. Nor could it be asserted that in such a case the right to defend might be refused in the exercise of discretion. There cannot be, in this respect, one law for the Supreme Court and another and different law for the Surrogate's Court. If the claimant could only apply to come in in case the accounting was had in the Supreme Court, he has no other remedy under the same circumstances where the accounting was in the Surrogate's Court, and certainly not the remedy sought in this proceeding.

The surrogate found that he issued and served a citation by publication on the creditors, heirs at law and next of kin of the deceased. At the request of the claimant he found that he was not cited or a party to the accounting. All that can be meant by this finding is a conclusion on the part of the surrogate that, since his name was not mentioned in the citation and since it was not addressed to him, he, therefore, was not a party and was not cited. The whole fabric of error in this case is built upon this slender superstructure. I will not now stop to inquire whether the surrogate was bound to pass upon requests presented to him. I had supposed that the Code had done away with that practice. It certainly has in some cases. (§ 1022.) But I do not regard the finding, if it can be called one, of the slightest consequence. It is universally held and understood that orders and decrees in probate courts are not made between party and party, but are in the nature of judgments *in rem* that are good against all the world, even against persons who are not cited. All that is necessary is that the court obtain jurisdiction, and it is conceded that the decree of distribution in this case was binding on the administrator, and, therefore, made with jurisdiction. Such judgments are not *in personam*, but generally adjudge the status of a person or a thing. In this case the decree adjudged that the claimant was not the brother of the deceased,

and, hence, it determined his status or relationship to the deceased. It likewise. determined the disposition to be made of the fund which was the thing or *res* over which the court had jurisdiction. When the surrogate got jurisdiction of the question as to what persons constituted the next of kin, the fact that the present claimant was not a party is wholly immaterial. The judgment is good as against all the world until it is opened, vacated or reversed. (*Exton* v. *Zule*, 14 N. J. Eq. 501; *Clemens* v. *Clemens*, 37 N. Y. 73; Herman on Estoppel and Res Adjudicata, §§ 45–48, 290–297, 326–330; Black on Judgments, § 635; Freeman on Judgments, § 319b; 2 Smith Lead. Cases, 812, 813.) Any one who will read the case first above cited will find it difficult to distinguish it from this. It covers the whole ground involved here and even more.

It may be profitable to stop and inquire for a moment as to the power of the surrogate in case it is held that this proceeding is authorized by any law. Of course, the proceeding is utterly futile unless the surrogate has power in an independent and collateral application, such as this is, to disregard or set aside his former decree which the administrator obeyed and was then discharged from his trust and to make a new decree that the administrator pay to this claimant the money which he paid to others under a decree where there was perfect jurisdiction. Can he, in this proceeding, set aside his former decree and order the administrator who has been discharged to account and pay again simply because that decree is claimed to be affected by an error of fact, for that is all that can be alleged against it? That would plainly mean that he may review his own judgments and correct his own errors of law and fact, not upon any appeal to him for that purpose, but in another and collateral proceeding. The general powers of a court of equity do not belong to a Surrogate's Court and that court has no power in this or any other independent proceeding to set aside or disregard its own decree of distribution and the order discharging the administrator, even though either or both orders were affected by fraud. (*Matter of*

*Randall*, 152 N. Y. 508; *Sanders* v. *Soutter*, 126 N. Y. 193.)
It would be a novel proceeding for a surrogate, on the peti-
tioner's application, to enter upon the trial of a question of fact
whether he or the five cousins, who have received the money,
are the sole next of kin of the deceased. That very question
he tried and decided once before, and his judgment remains
in full force and is a complete protection to the administrator,
as this court in principle has just decided. (*Platt* v. *N. Y.
& S. B. Ry. Co.*, 170 N. Y. 451.) If the claimant has any
case at all it is clear that he has mistaken his remedy and has
adopted a method of procedure that cannot be tolerated in
the administration of estates, and this would be so even though
his right to intervene is discretionary as his counsel claims,
since the discretion, if it exists under the law, was exercised in
his favor by the surrogate and he was permitted to come into
the original proceeding. We have seen that at least three dis-
tinct remedies were open to the claimant, if he is in fact enti-
tled to the estate of the deceased as her sole next of kin.
Those remedies were : *First*, a motion to open the former
decree. *Secondly*, an appeal from that decree ; and *thirdly*,
to invoke the jurisdiction of a court of equity in regard to the
whole controversy by an action in which the five distributees
could be made parties and could be decreed to restore the fund
distributed to them if the claim of the petitioner should be
established. But it seems that, for some reason, no remedy
will answer the purposes of the claimant unless he is per-
mitted to entertain this independent proceeding which ignores
all that has been done as absolutely void, although the admin-
istrator has been discharged from his trust after having dis-
tributed the estate that came to his hands in accordance with
the decree of a court of competent jurisdiction. No one
questions the proposition that the administrator was bound to
obey that decree and it is a universal rule that a trustee who
acts in obedience to a decree or judgment of a court of com-
petent jurisdiction is protected from any future personal
attacks by that decree. In this case the decree of distribution
is a shield and protection to the administrator and to the five

distributees until it is vacated or set aside, and if that is so this petitioner has no right to attack the administrator in this independent and collateral proceeding. The administrator being bound to obey the decree it would be quite absurd to hold that it is no protection to him although upon its face it is regular, but that he must respond to new claimants from time to time as they may appear.

Assuming all the facts stated in the claimant's petition to be true, he can accomplish nothing in this proceeding. He must first get rid of the order discharging the administrator and the decree directing distribution. It is not enough to say that he was not a party to this proceeding so long as the court had jurisdiction over the fund, the administrator and the distributees. The court could have made a complete and binding decree in the claimant's absence, since the very question before it was with respect to the persons constituting the next of kin of the deceased. These orders did not conclude the petitioner in the sense that he may not be heard in the proper court, in the proper proceeding, but they protect the administrator and the distributees until reversed or vacated. It is very obvious that the petitioner must invoke the broad powers of a court possessing general equity jurisdiction in order that he may compel the cousins, who are the distributees of the fund, to restore it to him through the coercive powers of that court. Any proceeding to which they are not parties cannot result in any relief to the claimant. There are two things which the petitioner must accomplish before he can recover the fund representing the estate of the deceased: (1) He must have the decree of distribution set aside or vacated and he must have the decree discharging the administrator set aside or vacated. (2) He must procure a decree requiring the five cousins to make restitution of a fund paid to them under an error of fact involved in the finding of the surrogate that they, instead of the claimant, were the sole next of kin. A Surrogate's Court has no power to do any of these things since they belong to, and are part of, the functions of a court with general equity jurisdiction.

I cannot concur in the judgment about to be rendered in this case for reasons that are very obvious. I cannot believe that the decree of distribution made by the surrogate and obeyed by the administrator is, as it is claimed to be, void as against this claimant or any one else. I cannot believe that it is legally possible to have two or more conflicting decrees of distribution all in force at the same time, one distributing the estate to the five cousins and the other to this claimant. I cannot believe that an administrator who has distributed an estate that has come to his hands in exact accordance with the decree of a competent court and has been discharged from his trust can be attacked years afterwards by a new claimant, at least so long as the former decree and discharge are in full force. In other words, I cannot believe that a trustee and the sureties upon his bond can be held personally liable for the estate that came to his hands and which he has distributed and disposed of under the orders of the court so long as that decree is in full force. To state the proposition in another way: I do not believe that a trustee or his sureties can be held personally liable for obeying the judgment of the court which he was bound to obey. Cases like this are liable to arise frequently, and such cases must, in the nature of things, have been presented to the courts before, but I doubt if it was ever held by any court in the civilized world that after an administrator had distributed the estate in his hands exactly as the court directed him that he afterwards could be held personally liable upon the application of a new claimant. If the laws of this state authorize or sanction any such procedure the situation would go far to justify some of the grotesque caricatures that novelists and writers of fiction have drawn to describe, or rather distort, those endless and expensive controversies in the courts concerning the distribution of the estates of deceased persons.

It is proper to observe before closing the discussion that this drastic law is to be made in a case over which this court has no jurisdiction. I have already called attention to the circumstance that there was no question before the surrogate

in this application except an issue of fact formed by the allegation in the claimant's petition and the denial of this allegation by the administrator.   The issue thus presented called for an inquiry as to whether this claimant was in fact the brother of the deceased.   The decision of the Appellate Division is unanimous and nothing can be reviewed on this appeal except a pure question of law raised by a proper exception.   There was no trial for the plain reason that the claimant was not prepared for trial and so the surrogate dismissed the proceeding.   The only exception in the case is one filed after the decree was entered on the dismissal of the petition.   If the surrogate could have dismissed the proceeding in the exercise of discretion then it is quite clear that the order is not reviewable in this court, since upon its face there is no statement that it was made for want of power.   The claimant asked the court for a commission to examine witnesses in Ireland to prove the allegations in his petition and the surrogate refused his application in that respect.   A ruling or order of a surrogate granting or refusing an application for a commission to examine witnesses in a foreign country is not reviewable in this court.   The right to produce the testimony of witnesses in such a proceeding, otherwise than in open court, subject to cross-examination, is not an absolute one, but is subject to the sound discretion of the court.   (*Merchants' National Bank* v. *Sheehan*, 101 N. Y. 176.)   This court cannot say that the surrogate decided anything amounting to legal error.   No one has been able to point out any question of law which the surrogate decided erroneously.   If the learned counsel for the claimant desired to bring the case to this court he should have made a formal offer before the surrogate to prove the facts stated in the petition and should have excepted to the ruling in case the surrogate refused to hear such proof.   I am far from suggesting that such an exception would be good, since for reasons already stated the whole proceeding was misconceived, but nothing less than that could give him any standing in this court.   When a case is regularly called in the court in which it is pending and the plaintiff is not prepared

to proceed to try the issue of fact involved, and neither gives proof nor makes offer of proof otherwise than by an application for a commission to a foreign country of the allegations of fact upon which he relies, the dismissal of his complaint or petition is not a legal error which this court can review. That is the only assignment of error which this appeal presents. It matters not what reasons the surrogate gave for his action. This court is not concerned with the reasons of the trial courts but with their judgments and orders. It matters not that the surrogate stated in his opinion that this proceeding was unauthorized. The fact still remains that he was not bound to wait until the claimant had gathered his testimony by commission in a foreign country. Moreover, one of the reasons given by the surrogate for dismissing the proceeding was that the claimant had not cited the five cousins who had received the estate under the former decree, so we have before us an order made by a surrogate which he had the power to make· in the exercise of discretion, and there is no statement in the order that it was made for want of power to entertain the proceeding. It has been held a great many times in this court that such orders are not reviewable. As the surrogate was not bound to wait for the claimant to gather his proofs by commission in a foreign country, and as the claimant had not brought before the court the parties who had received the estate under the decree of the court, the surrogate had the right to dismiss the proceeding as he did, and since the body of the order contains no statement that he did not dismiss in the exercise of discretion but for want of power, this court has no jurisdiction as no question of law is presented. (*Tilton* v. *Beecher*, 59 N. Y. 176; *Snebley* v. *Conner*, 78 N. Y. 218; *Salmon* v. *Gedney*, 75 N. Y. 481; *Tolman* v. *Syr., B. & N. Y. R. R. Co.*, 92 N. Y. 353.)

For these reasons I am in favor of affirming the order or dismissing the appeal.

HAIGHT, J. (dissenting). I concur with O'BRIEN, J., for affirmance. I think the Surrogate's Court acquired jurisdic-

tion of the proceedings for the judicial settlement of the accounts of the administrator and that the decree made therein is binding upon the administrator and all the persons cited, served and appearing upon the hearing; and that, under the provisions of the Code, but one final decree of distribution of the funds in the hands of the administrator is contemplated or provided for. I am further of the opinion that the surrogate adopted the correct practice in holding that the petitioner, not having been made a party to the proceeding and not having appeared therein, has the right, upon his application, to have the decree opened and then heard upon his claim to be the next of kin and entitled to share in the distribution of the estate.

PARKER, Ch. J., VANN and CULLEN, JJ., concur with BARTLETT, J.; O'BRIEN and HAIGHT, JJ., read dissenting opinions; WERNER, J., concurs with O'BRIEN, J.

Order reversed, etc.