JAMES J. THOMSON, as Receiver, etc., Respondent, v. CHARLES MacGREGOR, Appellant.

Where the engagement of a surety is for the future, he cannot be made liable for the past, as to which he has not covenanted.

In an action between copartners, R. was, on July 9, 1874, appointed receiver of the partnership assets, and upon that day entered upon the perform-

ance of the duties of the trust. On January 30, 1875, he gave a bond with defendant as his surety, conditioned that he would "*henceforth* faithfully discharge the duties of his trust." R. was subsequently removed as receiver, and plaintiff appointed in his place. Upon the accounting of R., to which defendant was not a party, R. was ordered to pay over to plaintiff a sum which was adjudged to be the balance of the trust funds in his hands. This order R. did not obey. In an action upon the bond it did not appear when the deficiency or misappropriation of the funds occurred. Defendant offered to show that no liability accrued after the date of the bond. The evidence was objected to and excluded. *Held,* that the order was not conclusive upon defendant, and the rejection of the proof offered was error; that the contract of defendant that R. should thereafter faithfully discharge his duties did not bind him by the order, and in the absence of express terms in the bond, binding him to submit to the judgment of the court, such a liability could not be imposed upon him.

*Thomson* v. *MacGregor* (13 J. & S. 197), reversed.

(Argued June 9, 1880 ; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of plaintiff, entered upon an order denying a motion for a new trial and directing judgment on a verdict. (Reported below, 13 J. & S. 197.)

This action was brought against defendant as surety on a bond given by Charles B. Riker as receiver.

In an action between copartners, said Riker was on July 7 appointed receiver of the partnership property, and as the complaint alleged, and was not denied in the answer, on that day "entered upon the discharge of that trust." On January 20, 1875, an order was granted, on application of creditors, requiring Riker to give a bond. The bond in suit was thereupon executed January 30, 1875. It is conditioned, that "said Charles B. Riker shall henceforth discharge the duties of his trust as such receiver." On May 10, 1875, an order was granted removing Riker from his position, requiring him to account, and appointing plaintiff receiver in his stead. Upon the accounting had pursuant to said order, an order was made by the court adjudging that there was a balance of the trust funds in Riker's hands, which he was directed to pay over to plaintiff; this sum plaintiff demanded but Riker did not pay. It

appeared that defendant was not a party in any way to the accounting.

On the trial defendant offered to prove the receipts and disbursements by the receiver from and after the date of the bond, and that all of the moneys received by him as such receiver were necessarily expended in the performance of his duties. This evidence was objected to and excluded; to which defendant's counsel duly excepted. The court directed a verdict for the amount specified in, and which Riker was required to pay by the order above mentioned, to which said counsel duly excepted. A verdict was rendered accordingly. Exceptions were ordered to be heard at first instance at General Term

*William W. Northrop* for appellant. The defendant was bound only for the faithful discharge of his trust in the future. (2 Pars. on Cont. 503; *Birkhead, etc., v. Brown,* 5 Hill, 634, 640, 641; *McCluskey* v. *Cromwell,* 11 N. Y. 598; *Willet* v. *Kipp et al.,* 12 Hun, 476; *Horn* v. *Perry,* 14 id. 409; *Bissell* v. *Saxton,* 66 N. Y. 60; *Myers* v. *U. S.,* 1 McLean, 493; *Farrar* v. *U. S.,* 5 Peters, 372, 389; *U. S.* v. *Boyd,* 15 id. 187; *Vivian* v. *Otis,* 1 Am. Rep. 199; *Hyatt* v. *Grover & Baker Sewing Machine Co.,* 41 Mich. 225.) Defendant being a stranger to the accounting of Riker, he is in no manner bound or concluded by the order of the Court of Common Pleas on said accounting. (1 Phillips' Evidence [2d ed.], 326, 327; 2 Cowen & Hill's Notes to Phillips' Evidence, 815–816, note 569; Phillips' Evidence [10th ed.]; Cowen & Hill's Notes, 526, note 149; *Hotchkiss* v. *Platt,* 7 Hun, 56; *Hickcock* v. *Scribner,* 3 Johns. Cases, 311; *Swarthout* v. *Payne,* 19 Johns. 294; *Bartlett* v. *Campbell,* 1 Wend. 50; *Douglas* v. *Howland,* 24 id. 35, 52–59; *Coan* v. *Osgood,* 15 Barb. 587; *Clark* v. *Montgomery,* 23 id. 470, 471; *Thomas* v. *Hubbell,* 15 N. Y. 405; *Giltman* v. *Strong,* 64 Penn. St. 242; *Jackson* v. *Griswold,* 4 Hill, 522; *Aberdeen* v. *Blackman,* 6 Hill, 324; §§ 522, 523, 524 and 535 of Redfield's Greenleaf on Evidence [12th ed.]; *Blasdale* v. *Babcock,* 1 Johns. 518;

*Kip* v. *Brigham*, 6 id. 159; *Poillon* v. *Volkenning*, 11 Hun, 385; *Methodist Church of N. Y.* v. *Barker et al.*, 18 N. Y. 463; *The Bridgeport Fire Marine Ins. Co.* v. *Wilson*, 7 Bosw. 429, 436; *Cuddeback* v. *Kent et al.*, 5 Paige, 92, 97, 98; *Hood* v. *Hood et al.*, 19 Hun, 300.) The court erred in holding the order made by the Court of Common Pleas conclusive for the sum demanded, and in excluding the testimony of Riker offered by the defendant to show that no breach of his trust had been committed after the execution of the bond, and also in excluding the report of the referee and the account Riker filed with him. ( *Westervelt* v. *Smith*, 2 Duer, 449; *Carpenter* v. *Doody et al.*, 1 Hilt. 465, 467, 468; *Foxcroft* v. *Nevins et al.*, 4 Greenl. 72; *Hayes* v. *Seaver*, 7 id. 237, 240; *Train* v. *Gould*, 5 Pick. 380; *City of Lowell* v. *Parker et al.*, 10 Metc. 369, 315.)

*Andrew Gilhooly* for respondent. The defendant's undertaking became fixed and operative by Riker's non-compliance with the order of December 28, 1877, though not a party to the accounting proceedings that resulted in the order. (*Schofield* v. *Churchill*, 72 N. Y. 565, 570; *Jackson* v. *Griswold*, 4 Hill, 522, 531; *Douglas* v. *Howland*, 24 Wend. 35; *Willey* v. *Paulk*, 6 Conn. 74; *Rapelye* v. *Prince*, 4 Hill, 119.) One may contract to become liable for the results or consequences of a suit between other parties, and in such a case a surety is concluded by the recovery against the principal, though not a party. (*Thomas* v. *Hubbell*, 15 N. Y. 407; *Thayer* v. *Clark*, 4 Abb. Ct. App. Dec. 391.) A surety is concluded where the condition of the bond expressly undertakes that the principal will abide the event of a legal proceeding. (*Thayer* v. *Clark*, 4 Abb. Ct. App. Dec. 391; *Schofield* v. *Churchill*, 72 N. Y. 565.) Where, by a fair interpretation of its terms, the condition of the bond necessarily includes compliance by the principal with the event of legal proceedings, a surety is concluded. ( *Willey* v. *Paulk*, 6 Conn. 74; *Rapelye* v. *Prince*, 4 Hill, 119.) It is also concluded where the condition of the bond stipulates for the performance of merely an act *in pais*. (*Douglas* v. *Howland*, 24 Wend. 35; *Thomas*

v. *Hubbell*, 15 N. Y. 405; *Schofield* v. *Churchill*, 72 id. 565, 570.) The plaintiff as receiver, being entitled to administer the moneys directed to be paid over, was the real party in interest, and entitled to prosecute in his own name, although the bond was to the people. (Code, § 449; old Code, § 111; *Baggott* v. *Boulger*, 2 Duer, 160, 170; Pomeroy on Remedies, 170; *Baker* v. *Bartol*, 7 Cal. 551; *People* v. *Norton*, 9 N. Y. 176, 179; *Hubbell* v. *Medbury*, 53 id. 99.)

FINCH, J. This case involves but the single question whether the order made December 28, 1877, by the New York Common Pleas, at the close of the accounting of Riker as receiver, requiring him to pay over to his successor, the present plaintiff, the sum of $2,099.27, with interest, as the balance in his hands, was conclusive upon the defendant, who was surety in Riker's bond, but who was not a party to the accounting and had no knowledge that it was pending.

The condition of the bond was, "if the said Charles B. Riker shall *henceforth* faithfully discharge the duties of his trust," and the instrument was executed and filed January 30, 1875. Riker was appointed receiver on the 9th day of July, 1874, and the complaint alleges that on that day he "entered upon the discharge of said trust," by which the pleader undoubtedly meant that on that day he entered upon the performance of the duties of his trust. Some six months later, and on January 20, 1875, Riker was directed to file a bond, and ten days later the instrument in question was executed by the defendant as surety. As the bond provided on its face that the surety was to be responsible for Riker's faithful discharge of duty only from the date of its execution, there was an antecedent period of six months during which the receiver was acting without any responsibility for his conduct on the part of this defendant, unless, indeed, some rule of law distorts the plain language of his covenant. The rule appears to be well settled that where the engagement of the surety is for the future, he cannot be held liable for the past, as to which he has not cove-

nanted. (*Bissell* v. *Saxton*, 66 N. Y. 60 ; *U. S.* v. *Giles*, 9 Cranch, 212 ; *Farrar* v. *U. S.*, 5 Peters, 373.)

In the case at bar, the accounting of Riker must be assumed to have covered the whole period of his official action. When or how the deficiency or misapplication of funds, which occasioned and justified the order of the court charging him with a large balance occurred, we do not know. His entire violation of duty may have ante-dated the bond and preceded the liability of the surety. The evidence against the latter was the order alone, and the failure of Riker to pay in accordance with it. The surety offered to prove the receipts and payments of Riker from and after the date of the bond, and sought to investigate the accounts so as to show that no liability had accrued since such date, but was steadily and systematically prevented by the rulings against him based upon the idea that the order of the court directing Riker to pay was conclusive upon the surety, and barred the defense which he sought to interpose.

Those rulings are now sought to be justified. The general rule that a judgment binds only parties and privies is not disputed, but the case is claimed to come within the class of authorities which hold that one not a party or privy to a judgment may yet be bound by it if he has expressly so covenanted. (*Douglass* v. *Howland*, 24 Wend. 35 ; *Thomas* v. *Hubbell*, 15 N. Y. 407 ; *Thayer* v. *Clark*, 4 Abb. Dec. 391 ; *Rapelye* v. *Prince*, 4 Hill, 119 ; *Baggott* v. *Boulger*, 2 Duer, 160 ; *Westervelt* v. *Smith*, id. 449.) The argument here is, that as the receiver is the officer of the court, its mere agent or instrument to effect its purposes, his plain duty is to obey all its orders, and, therefore, when the surety contracted that the receiver should faithfully perform his duties as such, he in effect contracted to be responsible for any disobedience of his principal, and so was bound by the order disobeyed. We think, however, that a surety is not thus to be brought within the rule by inference or argument, and that, unless the language of his contract expressly and explicitly contemplates a submission to the judgment and shows that the surety must have intended to

be bound by it, such rigorous liability is not to be imposed upon him by arguing it from general words having another purpose and a different aim, and so understood by him. The bond is not to be a snare in whose meshes he is caught unwittingly. The liability argued out is under the surface and concealed, and was probably wholly unsuspected by the surety. He might have refused to sign, if a covenant to be bound by a judgment against his principal had been so expressed as to be understood by him. The cases of administration bonds illustrate our idea. (*Scofield* v. *Churchill*, 72 N. Y. 565.) In those cases, besides the general covenant to faithfully execute the trust reposed, there is also the special agreement to obey all orders of the surrogate. That the rule in these cases which makes the adjudication against the principal conclusive on the surety is always based upon the special covenant which in terms submits the latter to the judgment or order of the court, indicates very plainly that the general words were not deemed sufficient, in and of themselves, to effect that result. And yet, since it might very justly be said that an administrator failed to faithfully execute his trust when he disobeyed the orders of the surrogate having jurisdiction, it would be almost as easy, in the absence of the special covenant, to argue out the conclusive liability of the surety, as in the case before us. In every decision which has made the adjudication against the principal conclusive upon the surety, it has been founded on apt words or phrases other than a general promise to perform duty, and which indicated an understood purpose to contract beyond the ordinary liability. Where the condition of the bond is, to obey the orders of the surrogate, to pay any deficiency arising on a foreclosure, to pay all damages and costs that may be recovered, there is apparent on the face of the instrument a purpose to submit to the judgment as conclusive.

The learned judge who wrote the opinion of the General Term seems to have felt the difficulty, for he says "the order and proceedings leading to it do not comprise something that is binding upon the defendant as an adjudication, but are evidence of the facts as to violation of duty in disobeying the

order," and the same ground in nearly the same language is taken by the respondent. But if not binding as an adjudication upon the surety it becomes merely evidence, and is not conclusive. It may be rebutted. If the order was wrong, if the receiver owed no balance, if he was required to pay what was not due, then he had faithfully performed his duty as receiver, although not obeying the mandate of the court. It is said "the surety has contracted that the receiver will pay." Undoubtedly, but pay *what?* Not any sum which the court may order, unless, indeed, the surety has bound himself by that rigorous contract, but such sum as the receiver justly owes, and as an honest and faithful officer ought to pay. And upon that question the surety has a right to be heard. We do not see that it avails any thing to try to distinguish between an order which is binding as an adjudication, and an order which is conclusive evidence as a fact. The substantial thing remains though the phrases are changed. The doctrine pushed to its logical results might easily make every surety for the performance of duty bound by the adjudication against his principal, or so nearly so as practically to abrogate the rule which holds him only when he has explicitly contracted to submit himself to the judgment of the court. We think the vice of the reasoning lies hid in the failure to sufficiently distinguish the relative positions of the principal and surety. As between the principal and the creditors of the fund it is the receiver's duty to pay according to the order for he has been heard and is bound by the adjudication. But as between the surety and such creditors it is not the receiver's duty to pay according to an order made without the surety's knowledge, as to which he has not been heard, and which is not, against him, a binding adjudication.

We cannot, therefore, affirm this judgment without holding that by the terms of his bond the surety contracted to be bound by the adjudication against his principal. The case was tried on that theory. The surety's attempted defense was shut out, and the order treated as conclusive. We can give it such effect only where the surety has so contracted, expressly and explic-

itly and in terms which show that such result was fairly understood and contemplated.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.