# THE PEOPLE OF THE STATE OF NEW YORK, Respondents, *v.* CHARLES E. WHITE and Others, Appellants.

*Assignee — his bond may be joint and several — a decree against the assignee is prima facie, but not conclusive evidence against his sureties — the statute of limitations is suspended as to the assignor's creditors while the estate is in the assignee's hands — mere delay of a creditor will not exonerate the surety.*

It is no objection to a bond given by an assignee for the benefit of creditors, under section 3 of chapter 348 of 1860, that it is joint and several in its obligation instead of being joint only.

In an action brought against the sureties to a bond of a general assignee, to recover an amount which he had been directed but failed to pay, the order made in the proceedings against the assignee is *prima facie*, but not conclusive evidence of his failure to faithfully discharge his duties and account for all the moneys received by him.

The statute of limitations does not run against the claims of the assignor's creditors while the estate remains unsettled in the hands of the assignee, as against the sureties upon his bond.

The mere delay of a creditor, to call an assignee to account until after he has become insolvent, will not relieve the sureties upon his bond from liability.

Appeal from a judgment in favor of the plaintiffs, entered on a verdict directed at the circuit.

*Thomas G. Ritch*, for the appellants.

*William Mitchell, Jr.*, for the respondents.

Daniels, J. :

The action was prosecuted against the defendant as the widow and next of kin of Charles E. White, who, together with two other persons, executed a bond on the 20th day of December, 1860, conditioned for the faithful performance by Palmer & Adams, as assignees under a general assignment, of their duties as such assignees, and that they should duly account for all moneys received by them. In 1868 the assignees were required to account for the assigned property and to make a settlement of their affairs in accordance with the provisions of the statute. The proceedings taken for that purpose were continued from time to time until the last day of December, in the year 1872, when a final order, or determination was made, adjudging the assignees to be liable to

pay to the creditors, at whose instance the proceedings were carried on, the sum of $8,189.10. An execution was issued for the collection of this amount, which was afterwards returned unsatisfied; and on or about the 14th day of March, 1877, pursuant to an order directing the prosecution of the bond, this action was commenced upon it to recover the sum so directed to be paid.

The statute did not expressly declare whether the bond required to be entered into, to entitle the assignees to take charge of and close up the trust estate, should be in form joint or joint and several. But it was in fact entered into by the persons executing it, in such terms as to render it joint and several. For this reason it has been urged that the bond was made broader than the law allowed it to be taken, and consequently that it imposed no obligation upon the persons executing it. But it does not follow from the fact that a joint bond would be a compliance with the requirements of the statute, that a bond joint and several would be invalid; for the statute has been framed in such language as to allow either form of bond to be a compliance with its provisions. They required that the assignees within thirty days after the date of the assignment should enter into a bond to the people of the State with sufficient sureties, conditioned for the faithful discharge of their duties and the due accounting for all moneys received by them. (Chap. 348, Laws 1860, § 3.) And this could as well be done by a bond joint and several in its obligation as by one that should be joint only. Under a statute enacted in this general language either form of bond may be resorted to and that would be a substantial compliance with what the legislature has required. This subject, under an enactment equally as general as that contained in this statute, was considered in *Pickersgill* v. *Lahens* (15 Wall., 141), and in the course of its determination, Mr. Justice DAVIS, who delivered the opinion of the court, made use of the following language: " It is undoubtedly true, as words of severalty are not employed, that a joint bond is a compliance with the law, but it by no means follows that a joint and several obligation is not an equal compliance with its terms. It is certainly not forbidden, and as the statute is silent on the subject the fair intendment is that either was authorized, and that the court had the right to direct which should be given." (Id., 145.) And this statement of the construction which such a

statute should receive, was repeated with approval in *Wood* v. *Fisk* (63 N. Y., 245, 249, 250). It was also again referred to in *Davis* v. *Van Buren* (72 N. Y., 587), and the principle received the further sanction of the court upon that occasion.

These are authorities clearly sanctioning the validity of this bond, although it would have been sufficient if the phrases declaring it to be joint and several had been omitted from it. Including them certainly was not such an addition as transcended anything, either declared by or to be inferred from the provisions of the statute under which the bond was given. And as the sureties voluntarily executed it in this form, they could have no good reason for claiming to be exonerated from the obligations assumed by them under it, because they might have objected to this particular attribute of it. By reason of the fact that the bond was so given, the assignees were permitted to exercise the authority over the trust estate which they would not have had were it not on account of this circumstance. And after securing them this right, the sureties themselves and the defendants succeeding to the obligations of one of them should be held to be estopped, upon the plain principle of justice, from denying their liability upon the bond.

On the trial of the action the proceedings taken by the creditors, which resulted in the determination made against the assignees, were allowed to be read in evidence. This was objected to, but that objection was properly overruled, for in the absence of anything indicating the determination to have been improper, it would form the measure and extent of the liability under the bond. As much as that was conceded to be the law in *Thomson* v. *MacGregor* (81 N. Y. 592). But during the course of the trial the defendants proposed to contest the extent of this liability by proof offered by them for that purpose, and that was rejected by the court, and to that decision an exception was also taken on behalf of the defendants. This bond differed in the obligations created by it from those given by administrators, or executors, or parties obtaining injunction orders; for by the latter class of bonds the sureties bind themselves to the effect that the principal will obey the orders or perform the determination which may be made against him. (3 R. S. [6th ed.], 73, § 7; Id., 82, § 56 ; Code Civ. Pro., § 611.).

While by the bond in controversy the sureties bound themselves

only for the faithful discharge, by their principals, of their duties as such assignees, and that they should duly account for all moneys received by them. These obligations were essentially different from those inserted in the other classes of bonds or undertakings, to which reference has been made. For neither in language nor by implication, did the sureties covenant or stipulate to be bound by the result of a proceeding against the assignees, to which they were not parties, and of which they had no notice. In this respect the bond was no broader than that in *Thomson* v. *MacGregor* (81 N. Y., 592), where it was held that the surety was not concluded by a determination establishing the liability of the receiver. The law upon this subject was carefully considered in *Bridgeport Insurance Company* v. *Wilson* (34 N. Y., 275), and the conclusions which were held to be warranted by the authorities were stated to include two classes of cases, the first; " where the covenantor expressly makes his liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result ; and, second, where the covenant is one of general indemnity merely against claims or suits. To the latter class belongs the case now before us. In cases of the first class the judgment is conclusive evidence against the indemnitor, although he was not a party and had no notice, for its recovery is the event against which he covenanted. (*Patton* v. *Caldwell*, 1 Dall., 419.) In those of the second class, the rule already stated applies, to wit : that the want of notice does not go to the cause of action, but the judgment is *prima facie* evidence only against the indemnitor, and he may be let in to show that the principal had a good defense to the claim." (Id., 280.) These rules bear the complete sanction of the preceding case of *Douglass* v. *Howland* (24 Wend., 35). To bind the surety for the result of a suit or proceeding, to which his principal only may be a party, it is requisite that such should be the reasonable import of the covenant entered into by him, or of the law under which his obligation may have been contracted. Where neither of these circumstances appears, their adjudication at the most can be but presumptive evidence against the surety. That was this case as it was made out upon the trial, and the evidence offered by the defendants to show that the amount owing to the creditors prosecuting the proceeding was less than had been awarded to them, should have been received.

The recovery was further resisted, upon the ground that the creditors' demand was barred by the statute of limitations before the action upon the bond was commenced. And *Gould* v. *Cayuga National Bank* (86 N. Y., 75), together with other authorities, have been relied upon as supporting this defense. But they very clearly fail to do that, for the assignees, by the terms of the general assignment, were invested with an active trust in the estate which it committed to their charge. This is clearly shown by the assignment itself, and that is assumed to be the nature and effect of such an instrument by the section of the statute already referred to prescribing the bond which must be given. And as to parties invested with the management of the estates of others in that manner, the rule is well settled that the statute of limitations cannot, while the trust shall continue, be relied upon as a defense. (Angell on Limitations [3d ed.], §§ 166, 167, and cases cited in notes.)

Nothing was shown upon the trial relieving this case from the operation of this rule, and for that reason, in no view which could be taken of the provisions of the statute, did they operate as a defense in the defendants' favor.

The offer which was made to pay these creditors, so far as their indebtedness was made the subject of preference by the terms of the assignment, did not appear to have extended far enough to create a defense. The person making it did not at the time have the means with him of performing the offer, even if it had been accepted, and under none of the authorities, therefore, could this amount to a tender of the debt. At least the proof left this part of the case in such a condition that it cannot be consistently held that the debt was discharged by what was stated to have taken place. (*Clark* v. *Sickler*, 64 N. Y., 231.)

It was further objected that the other creditors should have been joined in the proceeding taken for the accounting. But this was not required by the act of 1860, which provided that the judge, upon the petition of any creditor of the debtors, should have power to issue a citation or summons, compelling the assignees to appear before him and show cause why an account of the trust fund should not be made, and to decree payment of such creditors just proportional part of such funds. (Laws 1860, ch. 348, § 4.)

And this power remained practically unabridged at the time of

the final hearing and determination of the proceeding which had been taken. (Laws 1870, chap. 92.)

The fact that the creditors delayed the commencement of their proceedings until the assignees became insolvent formed no proper answer to the action, for the mere delay of a creditor to proceed against the principal debtor, has been uniformly held not to be sufficient to relieve the surety from liability. (*Cassidy* v. *Schedel*, 9 Hun, 340.)

But one substantial ground of error has been discovered in the case, and that arose upon the ruling of the court that the proceedings resulting in the settlement of the assignees accounts was conclusive upon the sureties in the bond. That ruling was in conflict with the authorities prescribing the rule of law applicable to this subject, and for that reason alone the judgment in the case should be reversed and a new trial ordered, with costs to the defendants to abide the event.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Judgment reversed, new trial ordered, costs to appellants to abide event.