STATE for Use of FREDERICK v. ALLEN
(No. 1606; Dec. 30, 1930; 294 Pac. 681)

For the appellant there was a brief and oral argument by *William C. Snow,* of Basin, Wyoming.

For the respondent there was a brief and oral argument by *C. A. Zaring,* of Basin.

BLUME, Chief Justice.

This case was brought in the name of the State for the use of Anna E. Frederick, formerly Anna E. Allen, as administratrix of the estate of George William Allen, deceased, against John D. Allen and National Surety Company of New York, defendants. From a judgment for the defendants, the plaintiff has appealed. The parties will be named herein in the same order as in the court below. The essential facts are about as follows:

In August, 1922, one George William Allen died intestate in Big Horn County, Wyoming. He left surviving him his widow, Anna E. Allen, and two minor children, two years and four years of age respectively. The father of the decedent, one John D. Allen, one of the defendants in the instant case, was appointed administrator of the estate of the decedent. The latter left some personal property, including a note of $4000 given by the administrator April 12, 1922, to the decedent, and 320 acres of land which appears to have been given to the decedent by his father. The administrator filed his final report on October 10, 1923, in which

he stated that the validity of the foregoing note was disputed. On October 15, 1923, a stipulation was entered into by Anna E. Allen, widow of the deceased, and John D. Allen, from which it appears that the 320 acres of land above mentioned, was, in December, 1922, deeded by the widow to John D. Allen, as trustee for the children, but no other information as to this deed appears in the record. The widow and John D. Allen agreed, in settlement of the differences existing between the parties, that the personal property of the estate should be turned over to the widow; that the final report should be approved and the administrator's bond exonerated; that the note for $4000 should be merged in the settlement; that Allen should take possession of the 320 acres of land, hold it for 14 years as tenant, and pay the sum of $6950 in installments of $500 during each year, one half of which should belong to the widow and one half to the minors, the widow's share to be a lien on the 320 acres of land; that the settlement should be in full of all claims of the widow against the estate, and that the deed to John D. Allen as trustee, given by the widow in December, 1922, should be confirmed except as modified by the settlement, and that the land should become the absolute property of the minors after the expiration of the 14 years. Of the amount so agreed to be paid by John D. Allen, $100 was paid at the time of the settlement and $450 shortly thereafter.

No notice of the filing of the final report or of the final settlement was published as required by law. Notwithstanding that, the court, on November 17, 1923, approved the agreement above mentioned and settled the estate. Soon thereafter Allen sustained a severe injury in an accident, and from that time on he apparently made no attempt to make the payments mentioned in the foregoing settlement. On May 28, 1928, in an action brought by Anna E. Frederick, as guardian for the minors, and of which action the surety is claimed to have been given notice, the court set the decree of November 17, 1923, which settled the estate,

aside for want of jurisdiction. On July 2, 1928, John D. Allen filed his affidavit admitting the indebtedness on the foregoing note of $4000, but claimed that he was insolvent from the time of his appointment as administrator up to and including the time of the filing of his final report. On the same day Anna E. Frederick, on behalf of herself and the above mentioned minors, filed objections, claiming that no part of the $4000 had been paid, and that John D. Allen was "properly chargeable" therewith. On November 19, 1928, the court entered an order finding that John D. Allen, administrator, was indebted to the estate in the sum of $5570 on the note of April 12, 1922, this indebtedness existing at the time of his appointment as administrator; and that the balance due the estate, after making allowance for fees as administrator, was the sum of $5567.50. The decree then proceeds:

"It is therefore ordered that John D. Allen, as administrator of the estate of George William Allen, deceased, forthwith pay to Anna E. Frederick, Administratrix of said estate, to succeed said John D. Allen, the sum of $5,567.50, being the assets of said estate. And it is further ordered that upon presentation of voucher, showing this payment to have been made, the said John D. Allen be discharged and released, as such administrator together with his bondsmen or bonding company."

This order not being complied with, the instant suit was instituted on December 11, 1928, upon the bond given by John D. Allen as administrator in the principal sum of $5000, to recover the sum directed to be turned over to Anna E. Frederick as administratrix by the order above mentioned. The defendants filed an answer admitting the execution of the bond, alleging the execution of the stipulation above mentioned dated October 15, 1923, and that the plaintiff by reason thereof was estopped from prosecuting this action. As a second defense it was alleged that John D. Allen, as administrator, was wholly insolvent from the time of his appointment up to the present time, and that his

failure to collect the $4000 above mentioned was in no manner due to his fault or neglect. The controversy in this case relates to that note.

1. Counsel for the respondents argue that under Section 6850, Wyo. C. S. 1920, no executor or administrator is accountable for any debt due to the decedent if it appears that it remains uncollected without his fault; that it appears herein that the indebtedness owing by him to the estate remained uncollected without his fault, for the reason that it was not his duty to collect it after the agreement of settlement above mentioned, confirmed by the court, was made, and further, because Allen was not thereafter able to pay it in any event; furthermore, that the surety had a right to rely on the agreement, and on the confirmation thereof by the court, inasmuch as it might otherwise have protected itself and that, accordingly, an estoppel arose. These contentions would probably be correct, if the agreement was absolutely binding, or if the decree of confirmation of November 17, 1923, was valid, or voidable merely, instead of void. The agreement was, of course, not binding on the minors, in any event, unless the decree confirming it was valid. We must accordingly proceed to consider whether it was or not. It has been treated as a decree of final settlement and distribution, and we shall so treat it here. No notice of the hearing on the final report was given to the minors, nor were they in any manner either by guardian ad litem or otherwise represented in court. The mother cannot be said to have represented them, for, aside from the fact that we know of no authority of law under which an agreement like that involved here made by her is binding upon her minor children, her interests were antagonistic to those of the minors, inasmuch as she was given a lien on the lands set apart to them. Nor can John Allen be said to have represented them, for the reason that he was making a settlement of his own note owing to the estate. Neither of them, in fact, pretended to represent them. Section 6974, Wyo. C. S. 1920, provides that when

an administrator is ready for final settlement, he shall file his final report and petition for distribution, and "shall publish for four weeks in some newspaper in the county, of general circulation in the county where the estate is situated, a notice to all creditors and others interested in said estate that he has filed his final account and petition for distribution of said estate with the clerk of the District Court, where any one interested may examine said account and petition and file objections thereto at any time within thirty days after the last publication of said notice." And Section 6867, Wyo. C. S. 1920, provides that "All matters, including allowed claims not passed upon on the settlement of any former account  *  *  *  may be contested by the heirs on cause shown." The notice above mentioned was never given, and no opportunity was afforded to the minors to appear and object to the final report or to the agreement above mentioned. They were not given their day in court. And while it may be true that if the notice had been published, no objection would have been filed by them or on their behalf, still to hold that the notice was immaterial in this case would require a holding that it is immaterial in any other case, and to that principle we cannot consent. And it would seem that it would have been merely the part of ordinary prudence in a case of this character to have appointed a guardian ad litem to represent the minors' interests. It is generally held that if no notice is given of the final settlement or final distribution, a decree of court settling the estate is void, unless the interested parties appear. 24 C. J. 950; 11 R. C. L. 185, 186; Dray v. Bloch, 29 Or. 347, 45 Pac. 772; Wood v. Myrick, 16 Minn. 494 (Gil. 447); Stevens v. Meserve, 73 N. H. 293, 61 Atl. 420, 11 A. S. R. 612; In re Killan, 172 N. Y. 547, 65 N. E. 561, 562; 63 L. R. A. 95 and cases in note thereto in 63 L. R. A. In the case last cited, where petitioner demanded a second accounting, and it was found by the lower court that he was not a party to the original accounting, the court said:

"Under these findings the decree of the surrogate's court in the original accounting proceeding is void as to this petitioner. 'It is an elementary principle, recognized in all the cases, that to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that the court should have jurisdiction of the person as well as of the subject matter, and that the want of jurisdiction over either may always be set up against a judgment when sought to be enforced, or any benefit is claimed under it.' "

In Dray v. Bloch, supra, the court said:

"It is apparent that before a final account can be heard, adjusted and settled, so as to be of binding force upon the creditors, heirs and legatees, these statutes must be observed, and unless they are, the court is without competent authority to make a decree allowing or disallowing an account."

It may be, without deciding the point, that if the decree of final settlement had been of unquestioned benefit to the minors as against the other parties thereto, the court, as held in the case of Heppe v. Sczepanski, 209 Ill. 88, 70 N. E. 737, 101 A. S. R. 221, ought not to have set it aside, but no such case as that is presented here. We must, accordingly, conclude that, without passing upon the effect of the decree of May 28, 1928, on the sureties, the decree of November 17, 1923, was void so far as the minors were concerned, and inasmuch as the agreement entered into between the widow and Allen seems to be indivisible, since she was given a lien on the lands of the minors, it is, perhaps—though we need not now decide the point—not enforceable even against her. Allen and his sureties, then, had no right to rely on that decree, and it could not give rise to an estoppel, at least as to the minors. The judgment of the court in this case cannot, therefore, be sustained on the foregoing theories, and inasmuch as it is not sought to be sustained on any other, the case must be reversed.

2. There remains the question as to the insolvency of Allen while he was administrator. That point was pleaded; testimony was introduced on both sides, and the law relating thereto has been argued at length here. Yet, although the trial court was asked to make findings of fact and of law, it seems to have overlooked this point, and there is nothing in the judgment which, at least directly, indicates that the court decided it. Counsel for appellant have argued at length that the evidence was insufficient on that point to sustain the judgment herein, but counsel for the respondent has not seen fit to say anything in answer thereto in his brief. In view of these facts we do not feel that we are called upon, or ought, to pass upon the sufficiency of such evidence, and must remit that question to the trial court. But, because of further proceedings herein, it seems to be necessary to declare the law on the subject.

Counsel for the appellant contends that we should adopt what is called the so-called Massachusetts rule, under which an executor or administrator is chargeable with any antecedent debt which he owes to the estate as though it were cash received. Aside from Massachusetts, that rule has been adopted by Alabama, New Hampshire, Ohio, Oregon and South Carolina. It makes the surety of a representative of an estate a guarantor of such antecedent debt. It is founded upon a fiction and not upon any principle of justice. At common law, the appointment of one's debtor as executor was held to extinguish the debt. It was presumed that since such executor could not sue himself, that the testator intended to forgive him his debt. The rule was founded upon some reason. But since a man could not give his property away to the prejudice of his creditors, it was further held that, if necessary for the payment of the debts of the testator, the antecedent debt of an executor could be reached in equity. 23 C. J. 1132. But the main rule was early disapproved in the United States, and statutes were enacted in many jurisdictions to abolish it. That

is true in Wyoming, which, by Section 6824, Wyo. C. S. 1920, following California, adopted a law reading:

"The naming of the person as executor does not thereby discharge him from any just claim which the testator has against him, but the claim must be included in the inventory, and the executor is liable for the same, as for so much money in his hands, when the debt or demand becomes due."

At the same time Section 6850 was enacted, reading as follows:

"No executor or administrator is accountable for any debts due to the decedent, if it appears that they remain uncollected without his fault."

Under these provisions the Supreme Court of California adopted the Massachusetts rule so far as executors were concerned (Treweek v. Howard, 105 Cal. 434, 39 Pac. 20), while rejecting it as to an administrator. Re Walker's Estate, 125 Cal. 242, 57 Pac. 991, 73 Am. St. Rep. 40. When the point arose in Montana, which, too, has the California Probate Code, the Supreme Court refused to adopt the Massachusetts rule, and at the same time the construction placed by the California court on the provisions above quoted relating to an executor, and held that it was enacted for the sole purpose of changing the common law rule as to an executor-debtor and to make certain that the common law rule controlling administrators and other trustees, whereby the assets would be available to the persons entitled thereto, would be applied to executors. We agree with the Montana court, and must reject the Massachusetts rule, which, in any event, is the minority rule. The cases on the subject are collected in 8 A. L. R. 84 et seq. Speaking of the majority rule, the note states:

"The more favored rule in America seems to be that the bond of an administrator or executor covers a personal debt owed by the principal to the decedent only to the extent

that it binds him to a faithful performance of his duties as administrator; that is, he must exercise due diligence and honesty in the collection of debts, including a debt owed by himself, and the sureties are liable for his failure to do so. But where it appears that the debtor-representative is unable to pay, the debt becomes uncollectable, and the sureties on the bond are not liable therefor.''

Several quotations touching this rule, further details of which are not now necessary to be discussed, will be found in connection with another point in this opinion, and we need but add, that the burden of proof of insolvency is on the administrator and his sureties. In Re Howell's estate, 66 Nebr. 575, 92 N. W. 760; Mosely v. Johnson, 144 N. C. 257, 56 S. E. 222; State ex rel. v. Gregory, 119 Ind. 503, 22 N. E. 1.

3. Counsel for the appellant contends that the judgment of the court of November 19, 1928, fixing the amount owing by Allen, as administrator, and of which the surety had no notice until afterwards, is *res judicata* and binding upon the surety. The contention would, perhaps, be valid under the Massachusetts rule above mentioned. United Brethern etc. v. Akin, 45 Or. 247, 77 Pac. 748, 66 L. R. A. 654, 2 Ann. Cas. 353. But we have rejected that rule. Counsel for the respondent rely on the text of 24 C. J. 1092, where it is said that:

''In an action on an administration bond the sureties are subrogated to all defenses which would have been available to the principal.''

The text, while in point here, is, however, apt to be misleading, and must be read in connection with the subject of conclusiveness of adjudication against the principal, discussed on pages 1079 and 1082 of the same book. An exhaustive note on the effect upon a surety of a judgment against the principal is contained in 40 L. R. A. N. S. 698 et seq. There are a number of cases, but in the minority,

which hold that a judgment against an administrator is, at least in the absence of notice, *prima facie* evidence only against the surety, and in these cases the latter would, of course, have the right to set up the same defenses which the principal has. Bird v. Mitchell, 101 Ga. 46, 28 S. E. 674. And these cases, even though we should not be willing to follow them in the ordinary case, cannot be altogether ignored in determining what is a just procedural rule in exceptional cases like that at bar. The greater number of cases hold that in the absence of fraud, sureties are concluded by orders of the probate court fixing the amount due by an administrator. Note 40 L. R. A. (N. S.) 712. None of the cases, however, or at least substantially none, deal with antecedent debts, and they do not, accordingly, reach the point involved in this case. There is no question here as to the amount owing by Allen to the estate, and he was directed to turn it over to his successors. His surety merely undertook that he "should faithfully execute the duties of the trust according to law," and if, accordingly, he was not delinquent in such duty by reason of the fact that he could not turn the antecedent debt over because of his continuous insolvency while acting as administrator, then can the surety be said to be in default? And in this connection we cannot overlook the fact that the rule of conclusiveness, applied by many courts in the ordinary suit on an administrator's bond, probably would not tend toward furtherance of true justice, to which surety companies are entitled as well as other parties, for in a case involving an antecedent debt, the solvency or insolvency of the representative of the estate becomes important and perhaps of paramount importance, while it would be wholly immaterial, in the ordinary case, and if the principal is and has been in fact insolvent, the surety is the only party financially interested in the question, and the principal himself is, at best, interested only from another standpoint. State ex rel. v. Gregory, 119 Ind. 503, was, like the case at bar, a suit upon the administrator's bond, and the court, speak-

ing of the indebtedness of the administrator owing by him prior to the time of administration, said in part:

"If, by the use of due diligence, all or any part of the claim could have been saved to the estate, his sureties are therewith chargeable, but if he was hopelessly insolvent, they do not become liable therefor, the burden as to the question of insolvency being on the administrator and his sureties."

Buckel v. Smith's Adm'r., 825 W. 1001, 1002, 26 Ky. L. 991, also was an action on the bond of an administrator in a like case, and the court said in part:

"But where he (the administrator) was always insolvent and unable to pay, the liability of his sureties upon their undertaking for his faithful performance of his duties should not be enlarged by a mere fiction of the law to such an unreasonable extent as to mulct them for something that no amount of diligence and no degree of honesty on the part of the administrator could have guarded against. Men sometimes cannot pay their debts. Their sureties as administrators do not undertake more than that they will diligently and honestly do what can be done in the administration of the estate committed to them."

Rader v. Yeargin, 85 Tenn. 486, 3 S. W. 178, was a like case, and one of the syllabi in the case states:

"A surety upon an administrator's bond does not thereby become surety for an antecedent debt due from his principal to the estate; but if such debt is lost by the subsequent insolvency of his principal, he will be held responsible therefor, if it could have been collected off his principal, by one representing the estate, in that matter, with due and proper diligence."

Sanchez v. Forster, 133 Cal. 614, 65 Pac. 1077, was a suit on the bond of an administrator by his successor, and the same rule just mentioned was laid down. In none of these cases, it is true, does it appear whether or not an order had been made by the probate court directing the administrator

to pay over the money, but the broad discussion of the question decided would seem to indicate that, perhaps, that was considered a matter of indifference. A number of cases discuss the injustice that would result from holding a decree of the probate court conclusive against a surety, when such decree involves an antecedent debt of the administrator. Thus it was said in the case of Harker v. Irick, 10 N. J. Eq. 269:

"If a person become surety for one as administrator, who at the time is a debtor to the estate and is insolvent and is never able to discharge such indebtedness, such surety is not bound for such a delinquency of his principal. He is only bound for the faithful performance of his duties as administrator. If, under such circumstances, the administrator should, in the settlement of his account with the court, charge himself with the debt and the account should be passed in such a shape as to bind the surety for the debt, the surety would be relieved upon application to the proper tribunal from such responsibility."

In Lyon v. Osgood, 58 Vt. 707, 715, 7 A. 5, 8, it was said among other things:

"The extension of the legal fiction of payment so as to make the surety liable for the executor's debt beyond his means to pay, when not guilty of laches, would often work great injustice to the surety. The surety ought not to be required to contribute from his own funds to make up an estate for the deceased which he, in fact, was not possessed of at the time of his death. It is true the executor is bound to use vigilance and diligence in pursuing and collecting all claims due the estate, and any unnecessary delay which results in the loss of a claim against another person or in the loss of his own indebtedness is a violation of his duty, for which the surety is responsible; but in the absence of laches we think the surety is liable upon his bond for the executor's debt only to the extent of the executor's ability to pay it. When the executor is unable to pay his debt, it is his duty in rendering his administration account to claim credit for his lack of means to pay his debt for the protection of his surety and on his failure to do so relief will be granted by the proper tribunal."

In these cases, the administrator had charged himself up with the amount of his antecedent debt to the estate, and the relief there granted was in a court of equity. The Vermont case has been twice cited with approval by the Supreme Court of California, namely, in In re Walker's Estate, 125 Cal. 242, 57 Pac. 991, 73 Am. St. Rep. 40, and Sanchez v. Forster, supra, but the approval went only to the principle of substantive law, and though the latter of the California cases was a straight action at law on the administrator's bond, strangely enough the procedural rule involved in the Vermont case was not mentioned, the court evidently considering that of no importance.

Some light on the question before us may be gathered from Burgess v. Young, 97 Me. 386, 54 A. 910, 913, a suit against the sureties of an administrator. The latter had neglected to set up insolvency of the estate, as he should have done, under the statute, when he was sued by a creditor. The plaintiff claimed that this bound the sureties, and that they could not set up insolvency of the estate. If that contention had been correct, then, as the court said, the plaintiff would have been enabled to make the sureties on the administrator's bond his debtors in the sum of $3000 upon a claim which was of no value against the estate —a situation very similar to that in the case at bar, if Allen was in fact insolvent. The court, after citing with approval a Massachusetts case, proceeds to say:

"So in the case at bar, the sureties had no opportunity to defend themselves against the claim of the plaintiff, which culminated in his judgment against the goods and estate of the deceased in the hands of the administrator. If they are now prevented from making the defense set up in their brief statement, they will also be precluded by a judgment passed *inter alios* and which they had no means of preventing. There seems to be no more reason for permitting the right of the sureties to plead extinguishment of authority, or statute of limitations, than for asserting their right to plead any other defense. It is the neglect on the part of the administrator to make the defense, that is in-

jurious. And neglect to make the defense of *nulla bona* is just as injurious as neglect to make the defense of the statute of limitations or extinguishment of authority. The one defense leaves both parties in just the same situation as the other. The plaintiff is no worse off with the defense of *nulla bona* than with that of the statute of limitations, and the defendant no better off. The kind of defense is immaterial. It is the opportunity to make it which is important, and there seems to be no good reason why the opportunity should not extend to the neglect of the administrator to make any kind of defense which could legally have been made. We think that the principle underlying the decision of the last two cases would admit the defendant's evidence.''

In New York, it seems, a judgment against an administrator is ordinarily conclusive on the surety. Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760, cases 24 C. J. 1080. Yet two cases from that state are almost exactly in point here: Gottsberger, et al. v. Smith, et al., 12 N. Y. Super. Ct. 566, and Baucus v. Barr, 45 Hun. 582, affirmed in 107 N. Y. 624, 13 N. E. 939. Both actions were upon the bond of an administrator. In the Gottsberger case Smith, the administrator, had charged himself with an antecedent debt, and the probate court directed him to pay the balance in his hands, which included such antecedent debt. Of these proceedings the sureties had notice. But the court, referring to the right of defense of the sureties, said:

''Indeed, in my opinion, this case might be rested upon the simple ground, that if Smith had been appointed collector (administrator ad colligendum) owing money to the estate, the sureties would *prima facie* be responsible for the due application of the amount. The debt would be assets. All that justice would require would be, that they should have the same right to prove, in their discharge, that the debt was desperate at the time of their bond, as their principal would have to prove that the debt of a third person was not collectable.''

Baucus v. Stover, supra, cited with approval by the California Supreme Court in re Walker's Estate, supra, was an action on a bond of an executor, to recover for the breach of the conditions thereof by the executor in failing to comply with the directions contained in the decree of the surrogate court directing him to make certain payments, including an antecedent debt. The sureties, it would seem, set up the defense of the insolvency of the executor, and the sole point in the case was as to whether or not, in view of such insolvency, the sureties were, nevertheless, liable. The trial court held that they were not, saying in part:

"They (the sureties) agreed, it is true, that the executor should 'obey the orders of the surrogate touching the administration of the estate,' and the surrogate has ordered that the executors pay the amount of this note. Now the executor cannot obey this order, because the estate brought him nothing to do it with. Can he make something out of nothing? No; he has not defaulted, therefore, and the sureties simply agree to make good his default. The order rests upon the condition that the estate brought the means of obedience to his hands, or, but for his fault as executor, might have brought them. The order is obeyed, so far as the facts permit its obedience. If it is to be construed as requiring the executor to make something out of nothing, then to the extent of the capacity of the executor to make something out of nothing, the sureties are liable for the full execution of that capacity, and they are not shown to have defaulted. But why should the statute compel such an order? Because it is right that the order should operate if there was, is or shall be anything for it to operate upon. But if there is nothing the order is harmless. The statute cannot create money; and if the money never existed, the statute has nothing to operate upon."

The ruling was upheld on appeal, and the court, referring to a bond much broader than the bond in question in the case at bar, said in part:

"The injustice of holding the sureties liable in this case is obvious and serious, and it should not be permitted save under the pressure of absolute necessity. The defendants'

trouble here grows out of the express provision of the bond holding the sureties liable to absolute obedience by the executor to the order of the surrogate. (Schofield v. Churchill, 72 N. Y. 565; Thomson v. MacGregor, 81 N. Y. 592, on page 598.) Were the sureties here bound simply to fidelity on the part of the executor, the case would be widely different and without its present difficulty. Still we are inclined to the opinion that liability by the executor in this case for his own debt to the estate, as for money in hand, was not within the purview of the bond; that such liability was not contemplated by those executing it, or, indeed, by the law pursuant to which it was required and given. * * * His sureties did not, by their bond, guaranty the payment of his debt to the estate, but only guaranteed obedience by the executors to all orders of the surrogate 'touching the administration of the estate committed to them.' Has not Barr answered this obligation fully on his part? What was the estate committed to his charge as executor? Was it not whatsoever of money or property which, with due diligence and entire honesty, could be made available by him for the payment of debts and for distribution? The debt of Barr was of no value. It did not go to enhance the estate in fact; really and in fact it contributed no valuable or available part of the 'estate committed to' the executors. But the orders, observance of which by the executors were guaranteed by the defendant's bond, were those made by the surrogate 'touching the administration' of such estate. In this view of the case a breach of the bond in suit was not established.''

We think that upon reason and authority, we are constrained to hold that the order of the court of November 19, 1928, should not be held to be conclusive upon the surety and that it has a right to set up the insolvency of Allen during his administratorship in this case, and we cannot agree with Rahe v. Jobush, et al., 197 Ill. App. 200, which holds the contrary. Our decision need go no further than the facts in the case require, and we need to hold merely that the surety has such right, in the absence of an adjudication on the question of insolvency, at least when no notice is given it, as is true in this case. We think that no such adjudication was made by the order of November 19, 1928.

Allen, it is true, filed an affidavit that he was insolvent during the time that he acted as administrator. The widow filed objections, not raising the question of insolvency, or the want of due diligence in collecting the note. The court in its order merely found the amount due from Allen and directed him to pay it to his successor. The most that could be said is that the question of insolvency, or the want of due diligence in collecting the note, was adjudicated impliedly, but justice to the surety would seem to require that whether it was or not ought to be certain in a case of this character, for, as already stated, if the principal is insolvent, it is the only party financially interested in the adjudication of that question, which, then, in a case of this kind, becomes one of importance, which is not true in ordinary cases. See In re Walker's Estate, supra.

The judgment herein is accordingly reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.